(4 Misc. Rep. 127.)

## HILLEARY v. SKOOKUM ROOT HAIR-GROWER CO.

(Common Pleas of New York City and County, General Term. June 3, 1893.)

1. CONTRACTS—CONSTRUCTION.
    Under a contract providing that plaintiff should exhibit her hair, in connection with defendant's hair restorer, for a year, for an agreed sum, payable monthly "while so exhibiting," plaintiff is entitled to recover her salary for the whole period covered by the contract, where she held herself in readiness at all times to perform such services specified by contract as defendant might direct, though at times defendant had no need of her services.

2. DISTRICT COURT OF NEW YORK—JURISDICTION—NONRESIDENTS.
    Plaintiff being in New York city when her salary became due, the district court of that city had jurisdiction of an action by her to recover such salary, though she was a nonresident, in that the contract, though entered into in Philadelphia, provided that she should work in such places as defendant should direct, and in that her salary, being due, was payable, in the absence of any stipulation to the contrary, in the place where she was working at defendant's direction.

3. SAME—FOREIGN CORPORATIONS—PLEADING.
    Code Civil Proc. § 3215, giving the district court of New York city jurisdiction of actions against foreign corporations having an office in such city, does not require the complaint, in an action in such court against a foreign corporation, to state that defendant has an office in New York, it being sufficient to establish such fact on trial.

Appeal from third district court.

Action by Ella Hilleary against the Skookum Root Hair-Grower Company to recover for services performed for defendant under a contract. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Carlisle Norwood, for appellant.
Miller & Miller, for respondent.

BISCHOFF, J. Defendant is a corporation organized under the laws of the state of Oregon, and engaged in the business of compounding and vending a preparation represented by it to promote the growth of human hair. On or about September 13, 1892, it entered into a contract with plaintiff by which the latter bound herself to enter defendant's employ, for one year from the date thereof, to exhibit her hair at such times and places (Sundays excepted) as defendant should direct, at a salary of $50 per month; defendant, also, to bear all hotel and traveling expenses. Excepting only as to the dispute hereinafter noticed, it was conceded that the terms of the contract of employment were correctly set forth in an instrument dated September 13, 1892, which was executed by both parties; the defendant acting by its manager, W. C. Halleck, who was the author of the document, and had been in continuous possession of it. At the time of the commencement of this action there remained unpaid to plaintiff the salary for two months, during which time her services and attendance had not been required by defendant for the purposes of the exhibition of

her hair, though she had remained in readiness to comply with any direction in that behalf; and on the trial defendant contended that, pursuant to the terms of the contract, no salary had accrued to plaintiff for that period. The contract was produced from defendant's custody, and contained the following:

"Said party of the second part [plaintiff] hereby engages herself to enter; into the employ of the party of the first part [defendant] at the monthly salary of fifty dollars, ($50,) payable as follows, to wit: The said party of the second part is to exhibit her hair for the period of one month, and the salary thereof is to be reserved for the security of the party of the first part, that the party of the second part will fully carry out the terms and conditions of this agreement. That, after the said party of the second part has worked and exhibited her hair for the period of one month, her salary shall commence to run at the expiration of one month, and her salary shall be paid monthly, while so exhibiting, at the rate of fifty dollars ($50.00) per month, payable at the end of each month."

The context of the instrument was type-written, except the words "while so exhibiting," which were interlined in the handwriting of defendant's manager, Halleck. Plaintiff denied that the interlineation had been made when she subscribed the instrument. Defendant maintained that it had been. Both parties supported their respective contentions by evidence, and upon the conflict thus ensuing the justice below decided in plaintiff's favor, and adjudged her entitled to the recovery of $100.

We have scrutinized the evidence with exceeding care, and, duly considering the advantage had by the trial justice, in observing the witnesses while under examination, we are unable to conclude that the judgment is against the weight of the evidence. Nor do we deem it at all material whether the interlineation was made before or after plaintiff executed the instrument. The sense in which an instrument is to be interpreted is its apparent sense,—that in which it will be commonly received; not the sinister, furtive sense of one of the contracting parties,—a sense forced out of the language by technical precision. That plaintiff executed the instrument with the words interlined would only prove that the fraud was successful to that extent. It is utterly unreasonable and preposterous to suppose either that plaintiff intended to enter defendant's employ for one year at a monthly salary of $50, the payment of which should be proportionate to the actual time and attendance required of her for the literal exhibition of her hair by the exigencies of defendant's business, or the caprice of its manager, or that defendant or its manager understood such to be plaintiff's intention. A bare perusal of the instrument is convincing that it was intended to convey the meaning that the salary would be paid so long as plaintiff continued in defendant's employ, and subject to its directions. "Interpretation is the art of finding out the true sense of any form of words; that is, the sense which their author intended to convey, and of enabling others to derive from them the same idea which the author intended to convey." Lieb. Herm. p. 11. "In no case of human life, in which we are called upon to act, to apply rules, or to understand what others say, can

we dispense with common sense and good faith, but they are peculiarly requisite in interpretation, because its object is to discover something that is doubtful, obscure, veiled; which may, therefore, admit of different explanations. If, without common sense, we may make even of strict syllogism an instrument, apparently, to prove absurdities, how much more are those two ingredients of all honesty necessary in interpretation. Common sense and good faith are the leading stars of all genuine interpretation." Page 77. "Good faith in interpretation means that we conscientiously desire to arrive at the truth, that we honestly use all means to do so, and that we strictly adhere to it, when known to us. It means the shunning of subterfuges, quibbles, and political shuffling. It means that we take the words fairly as they were meant." Page 80. Proceeding upon these fundamental principles, the following rules have been judicially evolved to serve as guides in arriving at the meaning of the parties to a contract, which, when applied to the case at bar, effectually sanction plaintiff's recovery: The language of a contract must be given a reasonable interpretation. Colt v. Insurance Co., 54 N. Y. 595, 597. If the language involves the intention of the parties in uncertainty and doubt, an interpretation which will make the contract unreasonable, and place one of the contracting parties entirely at the mercy of the other, must give way to one which is equitable towards both. Russell v. Allerton, 108 N. Y. 288, 15 N. E. Rep. 391. No one will be suffered to take advantage of "adroit and slippery" language. Johnson v. Hathorn, 2 Abb. Dec. 465, 468. And if one of the contracting parties has, by the practice of artifice or duplicity in the use of language, misled or deceived the other respecting its meaning or effect, the sense in which the latter understood it will prevail in the interpretation of the language. Potter v. Insurance Co., 5 Hill, 149; Barlow v. Scott, 24 N. Y. 40; White v. Hoyt, 73 N. Y. 505, 511.

Assuming plaintiff to have been a nonresident of this state, the court below, notwithstanding, had jurisdiction of this action. The contract was entered into in Philadelphia, Pa., and required plaintiff to exhibit her hair at such places as defendant should direct. In the absence of an agreement to the contrary, her salary was payable to her, when due, at the place where she was, at defendant's direction, for the time being. That was in the city of New York. Hence the cause of action arose there. Perry v. Transfer Co., (Com. Pl. N. Y.) 19 N. Y. Supp. 239.

Section 3215 of the Code of Civil Procedure[1] does not require the complaint, in an action in the district court against a foreign corporation, to state that the defendant has an office in the city of New York. It is sufficient if the fact be established on the trial.

None of the exceptions taken to rulings on the trial present error. Judgment affirmed, with costs. All concur.

---

[1] Code Civil Proc. § 3215, gives the district court of New York city jurisdiction of actions against foreign corporations having an office in such city.