ISIDOR HABER, Respondent, v. S. A. JACOBSON COMPANY, INC., Appellant.

Second Department, December 27, 1918.

Sale — essential elements of executory contracts for sale of goods — construction of contracts — provision by seller against risks of transportation — when seller prima facie bound to complete by delivery — effect of changed condition upon application of prior decisions.

The essential elements of executory contracts for the sale of goods are an obligation on the part of the vendor to deliver goods of a certain description to the vendee at some future time and on the part of the vendee to accept and pay for the same.

Such contracts should not be interpreted to give the seller control over its obligation providing it may reasonably be interpreted as giving him protection against contingencies over which he has no control.

Where a broker's memorandum of an executory contract for the sale of goods contained no condition except the words " subject to being unsold," and the written confirmation by the seller, after acknowledging receipt of a wire from their western house to the effect that the order had been booked and that prompt shipment would be made, was followed by the words " subject to safe and sound arrival," and it appeared that the goods were to come from Wisconsin and that at the time there was great demoralization in the transportation service which led to the government's taking over control of the railroads, it should be held that the quoted words were inserted to protect the seller against risks of transportation, and that it is *prima facie* bound to complete the contract.

In order to discharge itself from the obligation the seller must show a failure of sound and safe arrival due to risks of transportation service.

A second contract made two days later containing the words "subject to safe and sound arrival, no arrival, no sale," also renders the seller *prima facie* bound to complete the same.

The intent that the seller should ship the goods in question is as strongly indicated in the contract by the statement that it was instructing its western house to make prompt shipment as it would have been had the contract read "goods to be shipped promptly by our western house."

In determining whether cases in which the words "to arrive" or "on arrival" are held to import into the contract a condition precedent so that the obligation of the vendor is dependent on arrival, should be applied to modern business contracts, the changed conditions should be considered.

APPEAL by the defendant, S. A. Jacobson Company, Inc., from a determination and order of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 28th day of May, 1918, affirming a judgment of the Municipal Court of the City of New York, Borough of Brooklyn, Sixth District, in plaintiff's favor for the sum of $1,058 and costs.

The complaint is in writing and sets forth two causes of action for breach of contract for the non-delivery of merchandise under executory contracts of sale.

" BROOKLYN, N. Y. ——, 191–.

" To I. HABER, Dr.

     " 222 Myrtle Ave.:

         " N. Y., Oct. 3, 1917.

" *   *   *   Sold for the account of

     " S. A. Jacobson Co., Inc.

" to I. Haber

     " 125 One Hundred twenty-five Bags Green Peas at the price of $8.50 per 100 lbs. Net cash, delivered to his store.

     " Payment upon examination when goods arrive; and subject to being unsold.

" *   *   *   A. SAVARESE,              I. HABER.

     " Broker."

                                 " *Oct.* 3, 1917.

" I. HABER,

     " 222 Myrtle Ave.,

         " Bklyn, N. Y.:

     " DEAR SIR.— We beg to confirm sale to you of 125 bags Green Peas at $8.50 per hundred bls.

" We have just received a wire from our Western house to the effect that they have booked the order, and we are instructing them to make prompt shipment. Upon arrival we will give you examination order, sale having been made you payment against delivery order, subject to safe and sound arrival.

" Awaiting your further favors, we are

" Very truly yours,

" [S. A. JACOBSON]."

SALE OF WHITE PEAS.

" M.                    " BROOKLYN, N. Y.                191–.

" To I. HABER, Dr.

" 222 Myrtle Ave.:

" N. Y., 10/5/17   *   *   *

" Sold for the account of S. A. Jacobson Co., Inc., to I. Haber, 125 bags (One hundred twenty-five) White Peas same as Sample for 5 3/8 cents per lb. Terms, 10 days net.

" Subject to Examination upon arrival of goods, and subject to confirmation.

" Goods to be delivered together with the 125 Bags Green Peas.

" A. SAVARESE, Broker.                            I. HABER."

*" Oct.* 6, 1917.

" I. HABER,

" 222 Myrtle Ave.,

" Bklyn, N. Y.:

" DEAR SIR.— We have your favor of the 5th, order placed with Mr. Savarese for 125 bags, white peas, 5 3/8 c. per lb., with special terms on this lot of 10 days net from date of invoice. Subject to safe and sound arrival, no arrival, no sale.

" These 125 bags are to come in the same car as the green peas.

" We have advised our shippers to rush this car forward as quickly as possible.

" Very truly yours,

" [S. A. JACOBSON]."

The case was tried without a jury and judgment rendered for the plaintiff. The defendant appealed to the Appellate

Term of the Supreme Court, and the judgment having been affirmed has appealed by permission to this court.

*Stanley M. Lazarus* and *Arthur B. Hyman*, for the appellant.

*Henry L. Franklin*, for the respondent.

BLACKMAR, J.:

The contracts were executory contracts for the sale of goods. The essential elements of such contracts are an obligation on the part of the vendor to deliver goods of a certain description to the vendee at some future time, and on the part of the vendee to accept and pay for the same. It appears on the face of the contracts, and nothing in the evidence gives us further or other information, that the goods were not in defendant's possession at the time of the sale, but at some place from which it was necessary to ship them by cars. For its own protection the defendant inserted·in one contract the words " Subject to safe and sound arrival," and in the other " Subject to safe and sound arrival, no arrival, no sale." It was stipulated on the trial that the goods had not arrived. No evidence was given by either party to show why the goods did not arrive, whether they had ever been shipped, or of any other fact or circumstance to aid the court in its decision. The question submitted to and decided by the trial judge was whether, upon the concession by plaintiff that the goods never arrived, the defendant was entitled to a dismissal of the complaint. The court decided this in the negative and, as no further evidence was offered except on the measure of damages, gave judgment for the plaintiff.

If the contention of defendant is right, it is practically bound by the contract only at its own option, for it has it in its power to ship or not as it pleases, or in other ways to prevent arrival. Business men do not usually make contracts of that kind. Buyers of merchandise for future delivery have to provide for the anticipated needs of their business. It would be an improvident buyer who would purposely make a contract that would enable the seller to complete or not as it should turn out to be profitable or otherwise. This consideration, although not decisive, is entitled to weight. The contract should not be interpreted to give the seller

control over its obligation providing it may reasonably be interpreted as giving him protection against contingencies over which he has no control. We will consider first the terms of the contract first entered into. The broker's note contains no condition except in the words " subject to being unsold." The confirmation by defendant, which, in so far as it goes beyond the broker's note, is conceded to be a part of the contract, gives to the buyer the following assurance or representation: " We have just received a wire from our Western house to the effect that they have booked the order, and we are instructing them to make prompt shipment." After this recital the defendant added the words, " subject to safe and sound arrival." Against what did the parties understand that the defendant was protecting itself? Certainly against some contingency after the booking of the order and the shipment of the goods, for we must assume the truth of defendant's representations. We may draw the inference, from the evidence given on the question of a reasonable time for delivery as related to the subject of damages, that the goods were to come from Wisconsin. We may take notice that in October, 1916, there was great demoralization in domestic transportation service, which led to the government's taking over control of the railroads in the following December. It could readily be anticipated that such conditions might interfere with the transportation of the goods, or might result in causing deterioration in quality. The reasonable interpretation of these words is that they were inserted to protect the defendant against these risks. The words " sound " and " safe " suggest this interpretation. We think, therefore, that the defendant was *prima facie* bound to complete the contract, and that to discharge itself from the obligation it must show a failure of sound and safe arrival due to risks of transportation service.

We are referred to cases in which the words " to arrive " or " on arrival " are held to import into the contract a condition precedent so that the obligation of the vendor is dependent on arrival. (*Russell* v. *Nicoll*, 3 Wend. 112; *Idle* v. *Thornton*, 3 Camp. 274; *Johnson* v. *Macdonald*, 9 M. & W. 600; *Lovatt* v. *Hamilton*, 5 id. 639.) We note first that in these cases we often find suggestions by the court that if defendant prevented

the arrival he might be liable.  (See *Russell* v. *Nicoll, supra,* 120.)  These decisions were all upon shipments by sea, usually from distant ports.  They were rendered before the time of the submarine telegraph and long before the wireless.  The vendors were not in constant control of the shipments, as they are now over rail shipments through the use of the telegraph and telephone.  The changed conditions should be considered in determining whether these decisions should be applied to modern business contracts.  A modern and well-considered case where the opposite result is reached is *Barnett* v. *Javeri & Co.* (L. R. 2 K. B. Div. [1916] 390).  The doctrine that words like " on arrival " or " to arrive " create conditions precedent, is departed from in *Abe Stein Co.* v. *Robertson* (167 N. Y. 101).  It was held in that case that " goods to be shipped " imported a warranty that the goods would be shipped.  We think that the intent that the defendant should ship the goods in question is as strongly indicated in the contract by the words " we are instructing them [*i. e.,* defendant's western house] to make prompt shipment," as it would have been had the contract read " goods to be shipped promptly by our western house."

The second contract, made two days after the first, contains the words " subject to safe and sound arrival, no arrival, no sale."  We think that the addition of the four words " no arrival, no sale," was not intended to give to the contract a meaning other than such as we have suggested.  The defendant was bound in good faith to the fulfillment of the contract.  The intent of the parties was that it should be relieved if through fault of the carrier the goods did not arrive safe and sound.  The evidence on this subject was in defendant's own possession.  It has failed to show that the non-arrival of the goods was due to causes other than its own act, neglect or fault, and, therefore, the judgment was right.

The order should be affirmed, with costs.

Present — JENKS, P. J., THOMAS, RICH, BLACKMAR and KELLY, JJ.

Order of the Appellate Term affirming a judgment of the Municipal Court unanimously affirmed, with costs.