Morris Rosenstein and Mayer Rosenstein, Doing Business under the Firm Name and Style of Morris Rosenstein & Brother, Plaintiffs, *v.* The Farish Company, Inc., a Corporation, Defendant.

(City Court of the City of New York, Trial Term, November, 1919.)

Contracts — breach of — evidence — rule of ejusdem generis — when motion for a new trial denied.

Where an enumeration of specific things is followed by some more general word or phrase, the general word or phrase, under the rule of *ejusdem generis,* which is only an illustration of the broader maxim *noscitur a sociis,* is held to refer to the things of the same kind, and though ordinarily the rule limits the meaning of general words to things of the same class as those enumerated under them, it does not require the rejection of the general terms entirely.

A contract for the sale of 60,000 yards of a certain kind of goods at nine and seven-eighths cents per yard, to be delivered in installments, provided that if during the life of the contract the production of the Gaston mill should be curtailed " by strikes, lockouts to counteract strikes, shortage of labor, or any casualty or accident or bankruptcy or insolvency of the mill, deliveries shall be made proportionate to the production." In an action for breach of the contract, which was prepared by defendant, it appeared without objection on its part that at the times specified in the contract, defendant had delivered only 20,366 yards and refused on demand to deliver the remainder, and that the market price of the merchandise at the place and respective times at which it was agreed that deliveries should be made, was fifteen cents per yard. Upon holding that the language " shortage of labor or any casualty or accident " was controlled in its meaning by the preceding " if the production of the Gaston mills should be curtailed  *  *  *  by strikes, lockouts to counteract strikes " the court excluded testimony offered by defendant tending to show the labor conditions at the mill not brought about by strikes and lockouts to counteract strikes. *Held,* that such testimony was properly excluded and that defendant's motion for a new trial after a directed verdict in favor of plaintiff for $2,000 must be denied.

Motion by plaintiffs for a verdict and motion by defendant for a new trial.

I. Gainsburg, for motion.

Olcott, Bonynge, McManus & Ernst (Terence J. McManus, of counsel), opposed.

Finelite, J.   At the close of the entire case the plaintiffs moved for a direction of a verdict in their favor, which was granted.   The defendant thereupon moved for a new trial upon the ground that the defendant was precluded from offering evidence in reference to what was intended to be conveyed by certain agreements mentioned in the contract in so far as it applied

to the interpretation of the conditions mentioned in the agreement entered into between the respective parties. The agreement in so far as applies to the question involved reads as follows:

" Memorandum of Sale. The Farish Company, Commission Merchants, 110 Worth Street, New York; telephone Worth 5334. March 1, 1918. Order No. 48 ERV. Sold to Morris Rosenstein & Bro., 65 Bleecker St., New York City. Quantity, about 60,000 yds. Lawns. Count, 56x52. Width, 39″. Weight, not lighter than 8.00. Quality, First quality D/C as far as practicable. Price, 9⅞c. Terms: Net 10 days. Delivery, Half each September & October, equal weekly. At mill door with freight Allce. to N. Y. not exceeding 45c. CWT. Shipping Directions: Later. Goods on this order to be billed when ready for shipment, which will then be tendered to transportation company, and if refused will be held at mill or in storage subject to your instructions. If the production of the Gaston mill should be curtailed *during the time above named by strikes, lockouts to counteract strikes, shortage of labor, or any casualty or accident or bankruptcy or insolvency of the mill, deliveries shall be made proportionate to the production.*

        " The Farish Company, *Selling Agent;*
        " Per (Signed)  J. W. Valentine.  HMS."

(The italics are mine.) On the trial hereof it appeared from the facts herein that the defendant breached and violated said agreement by failing and omitting to make the deliveries in said agreement specified at the times therein named, and had delivered of said 60,000 yards only 20,366 yards thereof, leaving undelivered 39,634 yards of said merchandise, which they have omitted and refused to deliver, though delivery thereof had been demanded. It

City Court of New York, November, 1919.   [Vol. 109.

appears further that the current market price of said merchandise at the place and respective times at which by the terms of said agreement it should have been delivered was fifteen cents per yard. Thereupon the plaintiffs demanded an affirmative judgment in the sum of $2,000, which the court directed in their favor. The defendant contends that it was entitled to introduce testimony which it sought to introduce with respect to the labor conditions at the mill, and that it was error to exclude such testimony. The court refused to allow such testimony to be offered, holding that the language, " *shortage of labor or any casualty or accident,*" was controlled in its meaning by the language which preceded it, namely, " *if the production of the Gaston mill should be curtailed.* \* \* \* *by strikes, lockouts to counteract strikes.*" As a phrase standing in connection with other expressions, " shortage of labor " modifies the provision for strikes as used parenthetically in relation to it, meaning thereby that shortage of labor resulting from strikes was to operate as an excuse for delay. Any other construction would be doing violence to the language used and to the intention of the parties as evidenced by the instrument. As this provision even contains no stipulation limiting shortage of labor as an excuse only when not within defendant's control, it is, therefore, manifest that the parties could not be imputed with having had in mind any such definition or interpretation of the words " shortage of labor " as applicable to this contract. The parties provided against strikes and lockouts to counteract strikes and nothing else, and could have meant but that shortage of labor resulting from strikes should excuse non-performance. This interpretation may be given to the provision of the contract even without invoking the rule of *ejusdem generis.* As we must construe this provision in the

agreement as to the words used first, it is general in terms and should be construed under the rule of *ejusdem generis.* The doctrine under this rule is that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind. This rule ordinarily limits the meaning of general words to things of the same class as those enumerated under them. By the application of this maxim, which is only an illustration or specific application of the broader maxim, " *noscitur a sociis,*" general and specific words which are capable of an analogous meaning, being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general. But it has never been supposed that the rule required the rejection of the general terms entirely, but only that they should be restricted to cases of the same kind as those expressly enumerated. But in statutory construction it must yield to another salutary rule of construction, viz., that every part of a statute should, if possible, be upheld and given its appropriate force. This rule in statutory construction is by no means a rule of universal application, and its use is to carry out, not to defeat, the legislative intent. When it can be seen that the particular word by which the general word is followed was inserted, not to give a coloring to the general word, but for a distinct object, and then to carry out the purpose of the statute, the general word ought to govern. It is a mistake to allow the " *ejusdem generis*" rule to pervert the construction. It has further been held in 13 Corpus Juris, page 537, section 501, as follows: " The court will restrict the meaning of general words by more specific and particular descriptions of the subject matter to which they are to apply. Thus general words following particular or specific

terms are restricted in meaning to those things or matters which are of the same kind as those first mentioned. And in like manner general expressions will be restricted by particular descriptions or additions following them." In a note to the aforementioned section the reason for the rule is given as follows: " The rule ' that particularization followed by a general expression will ordinarily be restricted to the former, is based on the fact in human experience that usually the minds of parties, are addressed specially to the particularization, and that the generalities, though broad enough to comprehend other fields if they stood alone, are used in contemplation of that upon which the minds of the parties are centred.' To the same effect see *Hoffman* v. *Eastern Wis. R. R., etc., Co.,* 134 Wis. 603, 607." In *Davids Co.* v. *Hoffmann-La Roche Chemical Works,* 178 App. Div. 855, in construing the following clause in a contract for the sale of carbolic acid, in said clause it was stated by the court " ' Contingencies beyond our control, fire, strikes, accidents to our works or to our stock, or change in tariff, will allow us to cancel this contract or any part of the same at our option,' " does not relieve said company from liability on the ground that foreign countries from which it obtained its supply of carbolic acid have placed an embargo on its exportation since the outbreak of the war, especially where the purchaser offers to accept the domestic carbolic acid. The reasonable construction of the contract is to be found in applying to it the rule *ejusdem generis,* and the words " fire, strike, accidents to our works or to our stock or change in tariff " must be held to limit and qualify the " contingencies beyond our control," and to confine the happening which would justify the cancellation of the contract to those of a like nature to the one enumerated, which do not include an embargo.

In *Haber* v. *Jacobson Co., Inc.*, 185 App. Div. 650, Blackmar, J., writing for the court, said it was held that the essential elements of executory contracts for the sale of goods are an obligation on the part of the vendor to deliver goods of a certain description to the vendee at some future time, and on the part of the vendee to accept and pay for the same. Such contracts should not be interpreted to give the seller control over those obligations providing it may reasonably be interpreted as giving him protection against contingencies over which he has no control. Where a broker's memorandum of an executory contract for the sale of goods contained no condition except the words " subject to being unsold, " and the written confirmation by the seller, after acknowledging the receipt of a wire from their western house to the effect that the order had been booked and that prompt shipment would be made, was followed by the words " subject to safe and sound arrival," and it appeared that the goods were to come from Wisconsin, and at the time there was great demobilization in the transportation service which led to the government's taking over control of the railroads, it should be held that the quoted words were inserted to protect the seller against risk of transportation, and that it is *prima facie* bound to complete the contract. In order to discharge itself from the obligation the seller must show a failure of sound and safe arrival; " no arrival, no sale," also renders the seller *prima facie* bound to complete the same. The intent that the seller shall ship the goods in question is as strongly indicated in the contract by the statement that it was instructing its western house to make prompt shipment as it would have been had the contract read " goods to be shipped promptly to our western house." In determining whether cases in which the words " to arrive "

27

or " on arrival " are held to import into the contract
a condition precedent so that the obligation of the
vendor is dependent on arrival, should be applied to
modern business contracts, the changed conditions
should be considered. Held, further, " That the defend-
ant was bound in good faith to the fulfillment of the
contract. The intent of the parties was that it should
be relieved if through fault of the carrier the goods
did not arrive safe and sound. The evidence on this
subject was in defendant's own possession. It has
failed to show that the non-arrival of the goods was
due to causes other than its own act, neglect or fault,
and, therefore, the judgment was right. The order
should be affirmed, with costs." The agreement
involved herein has been prepared by the defend-
ant and was accepted by the plaintiff relying
upon the assurance that the merchandise would be
delivered at the time as fixed in said agreement, and
since the agreement is in the language of the defend-
ant, if the meaning thereof is doubtful, must be con-
strued favorably to the plaintiff. *Gillet* v. *Bank of
America,* 160 N. Y. 549, 555; *Marshall* v. *Commercial
Travelers Mut. Acc. Assn.,* 170 id. 434. We must also
give its words the meaning which the defendant ought
reasonably to have understood that the plaintiff would
put upon them. *White* v. *Hoyt,* 73 N. Y. 505, 511; *Nellis*
v. *Western Life Indemnity Co.,* 207 id. 320, 332, 334;
*Moran* v. *Standard Oil Co.,* 211 id. 187, 196. The
defendant by its agreement created a duty upon
itself, which by fair construction it was bound to
perform, and it cannot be relieved from its per-
formance by applying different constructions to
what was intended by its meaning. Thereupon the
court was justified in excluding such proof as the
defendant desired to offer in reference to the con-
tingencies that may or may not arise or did arise

which prevented the defendant from carrying out its agreement with the plaintiff by making the deliveries of the merchandise as called for in said agreement. *Cameron-Hawn Realty Co.* v. *City of Albany,* 207 N. Y. 377, 382; *Town of North Hempstead* v. *Public Service Corpn.,* 107 Misc. Rep. 19; *Cannistrici* v. *James C. Rives & Co.,* 165 N. Y. Supp. 933; *Mawhinney* v. *Millbrook Woolen Mills, Inc.,* 105 Misc. Rep. 99; *Cooper* v. *Mundial Trading Co., Inc.,* Id. 58; *Ducas* v. *Bayer Co., Inc.,* 163 N. Y. Supp. 32.    There was no objection as to the evidence offered by the plaintiff as to the market value of the goods and also as to its non-delivery.    It follows, therefore, that the evidence sought to be adduced upon the trial on behalf of the defendant, such as the shortage of labor due to those causes mentioned, were not conditions against which the defendant is protected by this agreement, and that such evidence, therefore, was properly excluded.    I have carefully read the authorities cited by the defendant, and from the recent construction by our courts of agreements somewhat similar I fail to see wherein the authorities relied upon by the defendant can be made applicable to the question involved herein. The motion for a new trial must, therefore, be denied, to which the defendant is entitled to an exception, with a stay of ten days and thirty days to make a case, if he so desires, after service of the order entered herein.

Ordered accordingly.