RAW SILK TRADING CO., INC., Respondent, *v.* HARRY KATZ and ABRAHAM FREED, Copartners, Doing Business under the Firm Name and Style of MADISON SILK MFG. CO., Appellants.

First Department, June 16, 1922.

Sales — action by seller for breach of contract based on refusal of buyer to pay cash for goods — contract provided for credit — clause " subject to credit limit at seller's discretion " did not give authority to demand cash — refusal to pay cash not breach — attachment properly vacated on ground that complaint failed to state cause of action.

In an action by a seller to recover damages for breach of a contract of sale of silk based on the ground that the buyer had refused to accept the goods and pay cash therefor, as demanded by the seller, it appeared that the contract, which was upon a printed form prepared by the plaintiff, provided for terms of credit; that in a separate paragraph the plaintiff had rubber stamped on the contract the following: " subject to credit limit at seller's discretion," and that the seller contended that it had the right under the terms of the contract to withdraw all credit and demand payment in cash.

*Held*, that the clause in question did not authorize the seller to withdraw all credit and to demand cash on delivery, but that said clause was inserted for the protection of the seller against any attempt to fix a liability upon it for failure to deliver, when in the seller's discretion it determined to limit the credit of the buyer. In other words, it was a condition of the sale that the seller had the option to notify the buyer that it had exercised its discretion to limit the credit, and if in that case the buyer declined to accept the goods upon the changed terms, the seller would be absolved from further performance.

Accordingly, the complaint and supporting affidavits which alleged the breach of the contract to consist of the failure of the buyer to receive and pay for the goods in cash, did not state a cause of action, and, therefore, the writ of attachment issued against the defendant should have been vacated.

APPEAL by the defendants, Harry Katz and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of May, 1921, denying defendants' motion to vacate a warrant of attachment.

The ground of the attachment was the non-residence of the defendants.

*Bondy & Schloss* [*Eugene L. Bondy* of counsel; *I. Russell Stein* with him on the brief], for the appellants.

————————, for the respondent.

GREENBAUM, J.:

Defendants moved to vacate the attachment on the ground that, on the conceded facts appearing in the complaint and motion papers, plaintiff has not stated a cause of action.

The complaint sets forth three causes of action for the alleged breach by the defendants of three separate contracts with the plaintiff for the purchase of raw silk on credit. The complaint sets out in each cause of action, and the supporting affidavit on behalf of the plaintiff alleges, that the plaintiff exercised its discretion as embodied in each contract to limit the credit of defendants by tendering the merchandise to them upon immediate cash payment therefor, and that the defendants refused to accept the same upon such terms.

The clause in each of the contracts, upon which plaintiff relies, reads as follows:

" RAW SILK RULES of the Silk Association of America are by this reference thereto made a part of this contract. Each delivery made under this contract to be considered as a separate sale. This contract is contingent upon strikes, floods, fire, pestilence, war, rebelling and other causes beyond our control; any change in war risk insurance or revenue laws, in excess of the present ones, for account of buyer. *Subject to credit limit at seller's discretion.*" (Italics are ours.)

Following the paragraph just quoted are other provisions in each contract not material to this discussion, excepting one of them, which relates to " price and terms," which in one contract provides for a " 4 months' Trade Acceptance, less 1%," and in the other two provides for " 90 days, less 1½%. Settlement within 30 days by cash or trade acceptance."

The question is, whether the phrase " Subject to credit limit at seller's discretion," was intended to confer the power upon the seller to abrogate the express provisions as to credit above quoted, and to compel the buyer to accept the goods and immediately to pay cash therefor when tendered, or whether it was solely intended for the protection of the seller, who might change the terms of credit and refuse to ship the goods unless the buyer acquiesced in the change of terms.

The contract is upon a printed form prepared by the plaintiff, with blank spaces filled in in typewriting, and with still other parts which were rubber stamped.

The words " Subject to credit limit at seller's discretion " are rubber stamped, and follow the clause relating to strikes, war and other contingencies, and are distantly removed from that part of the contract which specifies the terms of credit.

It is fairly debatable as to what is meant by the words " credit limit." They might refer either to a limitation of credit in respect of the quantity of goods to be delivered, thus limiting the amount or extent of credit to be given to the customer upon the terms mentioned in the contract as to time of payment, or they might refer to a limitation of the time of the credit for the amount of the goods mentioned in the contract. But upon either construction of the contract, the fact is that the act of the defendant resulted in giving no credit whatever, since it demanded cash on delivery, which could hardly be regarded as a *limitation of credit.*

Considering that the plaintiff drew the contract, and taking into account the allocation of the phrase under discussion, it seems to us that its purpose was to serve solely as a protection to the seller against any attempt to fix a liability upon it for failure to deliver, when in the plaintiff's discretion it determined to· limit the credit of the buyer.

In other words, it was a condition of the sale that the seller had the option to notify the buyer that it had exercised its discretion to limit the credit, and if in that case the buyer declined to accept the goods upon the changed terms, the plaintiff would be absolved from further performance. Any other construction would imply a positive obligation on the part of the defendants to pay the purchase price within any period, less than ninety days, as the buyer might in its discretion determine, even if that discretion should be exercised, as it was in this case, to the extent of wiping out all credit and of demanding spot cash upon delivery. If any such intention had been in the minds of the parties when the contracts were made, it would unquestionably have been expressed in unmistakable language.

The words " subject to " have a well-defined meaning by legal interpretation. The following quotation appears in 35 Cyc. 248: " If the sale is made subject to strikes, accidents or causes beyond the seller's control, the seller is not liable for deficiencies on his part in shipments, due to a strike.   \*   \*   \*."

In *Garfield & Proctor Coal Co.* v. *Penn. Coal & Coke Co.* (199 Mass. 22) the words " subject to," as there used, quite obviously mean " contingent upon," for it is held that in the event of strikes no liability attaches on the part of the seller.

So also the words " subject to " are construed in *Haber* v. *Jacobson Co., Inc.* (185 App. Div. 650).

It will thus be seen that the phrase " subject to " is practically equivalent to " contingent upon," etc. The seller in good faith may fix a credit limit despite the fact that the terms of credit had been stated in the contract, which, if not accepted by the buyer, would relieve the seller from liability for damages for non-performance.

The contract must be construed most strongly against the party drawing it, the plaintiff.

In *Pollock* v. *Pennsylvania Iron Works Co.* (13 Misc. Rep. 194; affd., 157 N. Y. 699) the court said that when the construction contended for would make the contract an unreasonable one and place one party totally at the mercy of the other, the courts will construe it liberally and not strictly. (See, also, *Hilleary* v. *Skookum Root Hair Grower Co.*, 4 Misc. Rep. 127; *Little* v. *Banks*, 77 Hun, 511; *Russell* v. *Allerton*, 108 N. Y. 288.)

The cases relied upon by the plaintiff do not support its contention, but on the contrary favor that of the defendants. *Lyonette Silks, Inc.*, v. *Dolson Co.* (187 App. Div. 473, 475) was an action by the purchaser, who alleged that the terms of the sale were to be ninety days net with the line of credit to be adjusted by the credit man of the defendant. It did not consider any such question as is here before us.

*Gillman* v. *Dunmore Worsted Co.* (183 N. Y. Supp. 47) also was an action by the vendee. There was no claim in that case on the part of the vendor that it could insist upon the vendee's taking the merchandise contracted for upon a credit limit made by the vendor under the contract. That case merely held that, under the circumstances there appearing, there was no liability on defendant's (vendor's) part for further execution of the contract.

*Melnick* v. *Borden* (185 N. Y. Supp. 305) was a case in which the vendor was the plaintiff under the contract as to the change of the terms of the credit, which are totally different from the contract in the instant case.

We are of opinion that the moving papers do not set forth a cause of action, and hence that the order denying defendants' motion to vacate the attachment should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.