FLUSHING HOSPITAL AND MEDICAL CENTER, Plaintiff, v ROBERT E. WOYTISEK, Defendant and Third-Party Plaintiff-Appellant. ASSOCIATED HOSPITAL SERVICE OF NEW YORK, Third-Party Defendant-Respondent.

Second Department, November 17, 1975

*Morris Weissberg (Robert J. Krengel* of counsel), for appellant.

*Jerrold I. Ehrlich (Joseph M. Piepul* of counsel), for respondent.

*Hayt, Hayt, Tolmach & Landau (Marvin L. Tenzer* of counsel), for Maimonides Medical Center, *amicus curiae.*

SHAPIRO, J. The issue here is whether the meaning of the provision of a policy of insurance issued by the third-party defendant, Associated Hospital Service of New York (Blue Cross), which reads: "Discount Days. The hospital shall make no charge to the Subscriber for 50% of the hospital's regular charges for Hospital Service rendered during the Discount days", is so clear, in and of itself, that its interpretation is a question of law and that no trial is necessary to determine its legal effect.

## THE FACTS

An understanding of the legal questions involved necessitates a statement of the factual context in which they arose. The plaintiff, Flushing Hospital and Medical Center, brought this suit against the appellant, Robert E. Woytisek, to recover $1,525.55, the amount which it claims he owes it, being 50% of the charges for hospital services which it rendered to his wife during a period of 15 days which were classified as "discount" days under his Blue Cross coverage.

The appellant, an employee of the City of New York, was a subscriber to the hospitalization insurance contract between the City of New York and Blue Cross. He and his wife, as a member of his family, thereby became eligible for all of the benefits of the Blue Cross policy with the city. That policy provided that "the hospital shall make no charge to the Subscriber for Hospital Service rendered during the Full Benefit days" and that "the first 21 days of such hospital confinement" are "referred to as 'Full Benefit' days". The policy also provided that "the next 180 ensuing days of such hospital confinement" are "referred to as 'Discount' days and that: The hospital shall make no charge to the Subscriber for 50% of the hospital's regular charges for Hospital Service rendered during the Discount days."[1] The policy contains no definition of the term "the hospital's regular charges". There is no reference in the policy to any contract between Blue Cross and the hospital, other than the following provision: "[Blue Cross] shall, subject to the terms and conditions hereof, compensate Member Hospitals for Hospital Service rendered by them to Subscribers by payments in such amounts and upon such basis as shall be determined from time to time by the Board of Directors of [Blue Cross]".

It is undisputed that there is a contract between Blue Cross

---

1. The term "Hospital Service" is defined in the policy as including the following:

" 'Hospital Service' as used in this Contract shall mean and comprise the following:

1. Bed and board, including special diets
2. General nursing service
3. Use of operating, cystoscopic and recovery rooms and equipment
4. Oxygen and use of equipment for administration thereof
5. Drugs and medications for use in the hospital (not including radium and radioactive substances) which, at the time of admission to the hospital, are listed in the U.S. Pharmacopeia or National Formulary or are commercially available for purchase and readily obtainable by the hospital
6. Sera, biologicals, vaccines, intravenous preparations and visualizing dyes, but not including human blood or blood plasma or other human blood derivatives
7. Use of blood transfusion equipment; administration of blood or blood derivatives if administered by a salaried employee of the hospital
8. Dressings and plaster casts
9. Anesthesia supplies and use of anesthesia equipment; administration of anesthesia if administered by a salaried employee of the hospital
10. Use of physiotherapeutic equipment
11. Basal metabolism examination
12. Use of cardiographic equipment
13. Laboratory examinations
14. X-ray examinations, but not including X-ray therapy".

and Flushing Hospital, in the form of a letter of acceptance from the hospital to Blue Cross. It is annexed to Blue Cross' pleadings and provides, in part: "We have read * * * the Hospital Service Plan annexed to and made a part thereof, and in consideration of your agreement to pay this Hospital a fixed amount of money per day of hospital services rendered to Subscribers to your Plan * * * we hereby agree to abide by the provisions of the annexed plan and to render hospital service as defined therein".[2]

Under the contract between Flushing Hospital and Blue Cross, the hospital billed Blue Cross for appellant's wife's "Full Benefit" days at the daily rate of $97.56 and for her "Discount" days at the daily rate of $48.78. The "Full Benefit" days payments included all of the items listed in the policy's definition of Hospital Service (which are set forth in n 1). However, the billing to the appellant for the discount days included additional charges for 10 items, eight of which were included in the hospital services covered by the $97.56 daily rate paid by Blue Cross. Further, the additional charge for room and board was $40.50 per day, which amount was less than one half of the daily rate paid by Blue Cross to the hospital for discount days.

Finally, in this regard, it should be noted that although Blue Cross' policy limits the hospital to a charge of, at most, 50% of its "regular charges for Hospital Service rendered during the Discount days", there is no specific provision that Blue Cross will pay the unpaid balance of those "regular charges for Hospital Service". Rather, there is only the provision that Blue Cross "shall, subject to the terms and conditions hereof, compensate Member Hospitals for Hospital Service rendered by them to Subscribers by payments in such amounts and upon such basis as shall be determined from time to time by" its board of directors. Aside from the foregoing, which makes no mention of special rates of payment, nothing in the Blue Cross policy, other than the use of the term "regular charges", indicates that those charges may differ from, and even substantially exceed, the rates paid to

2. Article 9-C of the Insurance Law of the State of New York regulates the organization and supervision of non-profit hospital service corporations such as Blue Cross. Section 254 of the Insurance Law permits a hospital service corporation to contract with hospitals to render service to its subscribers. Subdivision 2 of section 254 requires the approval of the Superintendent of Insurance of the corporation's rates of payment to a hospital under such a contract. Section 2807 of the Public Health Law contains a similar requirement.

the hospital by Blue Cross to compensate it for the hospital service it renders its subscribers for the "Full Benefit" days and for the amount it pays toward the cost of the hospital's rendering that service to its subscribers on "Discount" days.

The specific hospital service rendered to the appellant's wife by Flushing Hospital consisted of two "Full Benefit" days, with which her 21 "Full Benefit" days under the policy were used up;[3] she remained in Flushing Hospital for an additional 15 "Discount" days before she died. The bill which the appellant received from the hospital shows that it billed Blue Cross for those 15 days at a daily rate of $48.78, one half of the daily rate which Blue Cross paid the hospital for the two "Full Benefit" days; it billed the appellant for a total of $1,525.55, which included the following items:

| | |
|---|---|
| Room service | $607.50 |
| Operating room | 75.00 |
| Recovery room | 42.50 |
| Laboratory and Pulmonary Lab | 245.50 |
| X-ray | 40.00 |
| Drugs and nuclear medicine | 404.80 |
| Oxygen | 10.00 |
| ECG | 17.50 |
| Intravenous | 30.40 |
| Medical and surgical supplies | 18.75 |
| Blood | 40.00 |

The hospital's total charge to Blue Cross for the discount days was $731.70. The charge for room and board in the above listing is at a rate of $40.50 per day; all of the other charges listed are apparently for items covered as "Hospital Services" by the daily Blue Cross payment of $97.56 for "Full Benefit" days. There is no explanation of the reason for the difference between the amount billed the appellant by Flushing Hospital and the total of the listed items, $1,531.95. Nor is there any explanation of a notation on the bill showing an "allowance" to Blue Cross of $1,058.78.

In any case, it is clear from the foregoing that, under the aegis of the phrase "50% of the hospital's regular charges for Hospital Service", the hospital is seeking to collect from the appellant more than twice as much money for the hospital services rendered to his wife during the 15 discount days than

---

3. She had used 19 such "Full Benefit" days in other hospital stays during the 90 days prior to her admission to Flushing Hospital.

it is receiving from Blue Cross as the latter's share of the partial coverage of the cost to the appellant of that service.

## The Contentions Of The Parties

Blue Cross contends that the "ultimate question for decision is the legal meaning of the term 'regular charges' within the context of the contract at issue" and it asserts that those charges "are the usual and customary charges to patients in the normal course of business." The affidavit of the Controller of Flushing Hospital, submitted in opposition to a motion by the appellant for summary judgment, declares that the hospital's billing to the appellant for the last 15 days of his wife's stay in the hospital was, in addition to a per diem rate of $48.75 *[sic]*, "at a rate of 50% of the hospital's regular charges for the hospital services rendered directly to * * * the surviving spouse of the patient", a member of Blue Cross. Woytisek contends that to restrict the issue to the meaning of the term "regular charges" gives no effect to the contract provision which limits the subscriber's liability to *"50% of the hospital's regular charges for Hospital Service rendered during the Discount days"* (emphasis supplied). This provision, he contends, means that the subscriber's charge for hospitalization for discount days shall be no more than half of the total to be paid for hospitalization by him and Blue Cross. Relevant in this connection is a statement in the affidavit of Frank Palma, an employee of Blue Cross, submitted in support of Blue Cross' motion for summary judgment, that: "Under his contract with * * * [Blue Cross] the [third-party] plaintiff is responsible for only 50% of those hospital charges, covered by the AHS contract, rendered during the remaining 15 days of Catherine Woytisek's hospital stay. One half of the total charges for these 15 days was billed to Robert Woytisek, the remaining charges having been paid by Associated Hospital Service pursuant to its contract with the plaintiff hospital." The normal inference is that if an insured pays 50% of certain charges and the insurer pays the remaining charges, the insured and insurer are splitting the total charges equally. Since the Blue Cross policy contains no language negating that inference, the absence of such clarifying language creates an ambiguity, at least as far as the insured is concerned. While it is true that, under the agreement between Blue Cross and Flushing Hospital, it is made clear that the hospital will accept Blue Cross' payment of half of the daily rate it pays for

all of the hospital services listed in its policy with its subscriber's employer in lieu of the payment of a full 50% of its charges to non-Blue Cross patients, there is nothing in the Blue Cross policy distributed to its subscribers which so informs its insureds.

## THE APPLICABLE LAW

In dismissing the third-party complaint for failure to state a cause of action, the Appellate Term cited the case of *Hartford Acc. & Ind. Co. v Wesolowski* (33 NY2d 169, 171–172), which states: "The objective in any question of the interpretation of a written contract, of course, is to determine 'what is the intention of the parties as derived from the language employed' (4 Williston, Contracts [3d ed.], § 600, p. 280). At the same time the test on a motion for summary judgment is whether there are issues of fact properly to be resolved by a jury (CPLR 3212, subd. [b]). In general the courts have declared on countless occasions that it is the responsibility of the court to interpret written instruments. (Williston, *op. cit.* § 601, p. 303). *This is obviously so where there is no ambiguity (Bethlehem Steel Co. v. Turner Constr. Co.,* 2 NY2d 456).

*"If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury* (Restatement, 2d, Contracts, T.D. No. 5, § 238). On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court. (Cf. *Mallad Constr. Corp. v. County Fed. Sav & Loan Assn.,* 32 NY2d 285, 291.)" (Emphasis supplied.)

Relying on the rule enunciated in the *Wesolowski* case, the Appellate Term concluded that the terms of the policy were clear and unambiguous; that therefore construction of the policy should have been undertaken by the court; and that in view of both the Blue Cross hospitalization insurance policy, and of its contract with the hospital, there was, as a matter of law, no merit to the position advanced by the third-party plaintiff.

There is an ambiguity in the policy's failure to define the term "the hospital's regular charges" in the phrase "the hospital's regular charges for Hospital Service", especially when the phrase in the Blue Cross policy is read, as it must

be, together with the provision limiting the appellant's obligation for payment to 50% of the hospital charges covered by the Blue Cross contract. Thus, it cannot be stated as a matter of law that the phrase means the charges assessed by the hospital against a person having no Blue Cross coverage. It also fails to make it clear that Blue Cross will not have to pay the remaining 50% of the charges included in "Hospital Service" which are unpaid by the insured, an amount which, as the remaining unpaid "hospital's regular charges", might reasonably be assumed by the insured to be equal to those with which he is chargeable under the policy. Whether the result of that ambiguity is to place on Blue Cross, the insurer, the duty to reimburse the insured for any amount in excess of one half of the total collected by the hospital (both from Blue Cross and from the insured) for the hospital services it provided the insured which were covered by the policy necessarily depends on a resolution of the intention of the parties, based upon extrinsic evidence. Thus, a plenary trial is required and the issues should not have been disposed of by summary judgment.

Since we are here dealing with the interpretation of a contract drawn by Blue Cross, the following statement by Professor Williston is clearly applicable. He said: "Since one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved in favor of the latter" (4 Williston, Contracts [3d ed.], § 621, pp 760–761; see, also, *Raw Silk Trading Co. v Katz,* 201 App Div 713, 716; *Bristol v Cornell Univ.,* 237 App Div 771, 775; *Janos v Peck,* 21 AD2d 529, 533, affd 15 NY2d 509; 3 Corbin, Contracts, § 559).

Also supporting the conclusion that the order appealed from should be reversed is the fact that, insofar as the appellant and other subscribers to Blue Cross policies are concerned, they may well be the subjects of contracts of adhesion, a contract "where one of the parties is in a disadvantageous bargaining position because the provisions are standardized and stereotyped"; such contracts are "narrowly construed against the writer" (4 Williston, Contracts [3d ed], § 626, pp 855–857). Hence, the interpretation of the provision here under consideration concerning payment by the insured of no more than 50% of the hospital's regular charges for "Hospital Service" must be construed against Blue Cross or, at the very

least, the interpretation of the provision raises a question of fact.

The order of the Appellate Term should therefore be reversed and the order of the Civil Court affirmed insofar as it denied the third-party defendant's motion for summary judgment.

LATHAM, J. (dissenting). In my judgment, the majority has strained to find a fact issue where none exists. We are dealing here with two separate and distinct contracts. One, between the subscriber and Blue Cross, provides that the hospital shall make no charge to the subscriber for 50% of "the hospital's regular charges for Hospital Service". The items of hospital service are thereafter specified. I perceive no ambiguity in this plain language and, contrary to the suggestion of the majority, it needs no definition. The adjective "regular" has to mean something; it can only mean the usual and customary charges billed to hospital patients in the normal course of business. It means that, whatever the regularly charged total bill would be, the subscriber would not be charged 50% of that total. We should neither strain to give a different and unnatural meaning to these words nor remake the contract between the parties.

As the Court of Appeals said, in *Bethelem Steel Co. v Turner Constr. Co.* (2 NY2d 456, 460): "It has long been the rule that when a contract is clear in and of itself, circumstances extrinsic to the document may not be considered *(General Phoenix Corp. v. Cabot,* 300 N.Y. 87) and that where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract *(Brainard v. New York Cent. R.R. Co.,* 242 N.Y. 125; *Matter of Western Union Tel. Co. [American Communications Assn.],* 299 N.Y. 177)."

At issue in the *Bethlehem Steel* case was the meaning of the contract term "prices for component materials". The Court of Appeals ruled that a trial was unnecessary to resolve the meaning of that language. "Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact" *(Bethlehem Steel Co. v Turner Constr. Co., supra,* p 460).

The contract upon which the subscriber relies gives notice to him that Blue Cross is paying the hospital *not for the other 50% of the bill* but *"in such amounts and upon such basis as shall be determined from time to time by the Board of Directors"* of Blue Cross. There is no ambiguity about the arrangement—it is spelled out in the subscriber's contract and is as clear as a bell.

Pursuant to this latter provision, in a separate contract to which the subscriber was not a party, Blue Cross agreed to pay the hospital "a fixed amount per day of hospital service rendered" to subscribers. The two contracts are not to be read together. The former was for regular hospital service; the latter for a fixed daily fee in lieu of the regular hospital service charged. Otherwise, the subscriber's contract would certainly have read "at the same rates in effect between Blue Cross and the hospital". Clearly, the "rate" paid to the hospital was based upon many factors other than the regular hospital charges made to patients.

When Blue Cross has paid the hospital at the per diem rate contracted for, and the subscriber is billed for 50% "of the regular charges" for hospital service, all obligations have been performed to two separate parties under two separate and distinct contracts. There being no ambiguity in the contracts, their interpretation is for the court. I believe the Appellate Term correctly dismissed the third-party complaint. The subscriber should be required to pay one half of the regular charges.

Further, it appears to me that there is no extrinsic evidence which would be relevant at trial. As stated by Judge (now Chief Judge) BREITEL, in *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.* (32 NY2d 285, 291), "only where the intent must be determined by disputed evidence or inferences outside the written words of the instrument is a question of fact presented".

I am satisfied, indeed convinced, that there is *no* relevant "disputed evidence or inferences outside the written words". There is *nothing to try.*

MARTUSCELLO, Acting P. J., and BRENNAN, J., concur with SHAPIRO, J.; LATHAM, J., dissents and votes to affirm the order of the Appellate Term, with an opinion.

Order of the Appellate Term of the Supreme Court for the Second and Eleventh Judicial Districts, dated November 6,

1974, reversed and order of the Civil Court of the City of New York, Queens County, entered June 12, 1974, affirmed insofar as it denied the third-party defendant's motion for summary judgment, with $50 costs and disbursements on the appeal to this court and $30 costs and disbursements on the appeal to the Appellate Term.