FULTON BAG & COTTON MILLS, INC., Appellant, v. JOSEPH FRANKEL and LOUIS FRANKEL, Copartners Doing Business under the Firm Name of FRANKEL BROTHERS, Respondents.

First Department, May 27, 1921.

Sales — payment in advance cannot be required under provision that terms of payment may be revised by seller — contract construed to require tender of goods at buyer's place of business — when attempt to cancel contract and refusal to order goods out does not relieve seller from making tender — refusal of seller to make delivery till balance due on another contract is paid constitutes breach.

The seller of goods has no right to demand payment for the goods in advance under a contract which gives him the privilege of revising the terms of payment. The reasonable construction of such a provision is that it was intended to relate to terms of payment involving some period of credit after delivery.

Under a contract for the sale of goods which contains a provision, with respect to the time and place of delivery, that " Goods to be taken out prior to Nov. 25th, 1918. * * * Delivery: After completion your order Sept. 18th; 10 bales every ten days. Freight paid to 318 East 32d Street, N. Y. C.," the seller did not have the right to await shipping directions from the buyer, but if it wished to put the buyer in default it was bound to tender delivery at the place designated.

Tender of the goods was not made unnecessary by the fact that the buyer asked to have the contract canceled, which the seller refused to do, and that the buyer refused to order the goods out as provided in the contract.

The seller breached the contract by refusing to make deliveries thereunder till a balance due on a prior contract had been paid, as the reference to the prior contract was for the purpose only of fixing the time when deliveries should commence.

CLARKE, P. J., and GREENBAUM, J., dissent in part, with memorandum.

APPEAL by the plaintiff, Fulton Bag & Cotton Mills, Inc., from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 7th day of July, 1920, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case.

*Milton J. Bach* [*Thomas A. Eager* with him on the brief; *Clifford Seasongood*, attorney], for the appellant.

*Ira Skutch* [*Benjamin F. Feiner* with him on the brief; *Feiner & Maass*, attorneys], for the respondents.

LAUGHLIN, J.:

This is an action by a seller against a buyer to recover as for a breach of the contract the purchase price of goods alleged to have been sold and delivery tendered. Plaintiff was nonsuited at the close of its evidence. The point presented by the appeal is whether it was incumbent on the plaintiff to tender delivery of the goods to the defendants at their place of business in the city of New York without payment in advance, or whether it was defendants' duty to call for the goods at the seller's place of business and tender payment in advance and demand delivery there. The contract of sale was made on the 19th of September, 1918, and is in writing and was executed in duplicate. So far as material to the points presented by the appeal, it provided that the plaintiff sold to the defendants at twenty-five cents per yard, fifty bales of 2,000 yards each of double finished Hessian goods, known as burlap, of the quality of the five bales shipped by the plaintiff to the defendants on the seventeenth of September. Evidently a printed form of contract was used for the terms of payment are given as net cash and this is followed by a provision that the terms of payment are subject to revision by the seller and that the purchase price was payable at Brooklyn, in New York or Brooklyn exchange. With respect to the time and place of delivery the contract provided as follows: " Goods to be taken out prior to Nov. 25th, 1918. * * * Delivery: After completion your order Sept. 18th; 10 bales every ten days. Freight paid to 318 East 32d Street, N. Y. C."

The last delivery under the contract of September eighteenth

was made on the 3d of October, 1918. Defendants did not order out or take any of the goods under this contract and the plaintiff made no tender of delivery of the goods. The evidence shows that the words " Goods to be taken out " have a well-known meaning in the burlap trade but such meaning was not shown. On the 17th of October, 1918, defendants wrote plaintiff as follows: " We would ask that you kindly cancel our order for burlap, given you Sept. 19th. Kindly acknowledge same; " and two days later plaintiff answered refusing to cancel the order and stating that it expected defendants to live up to the contract and that the goods were set aside by it when the contract was made to enable it to fulfill on its part and that it would enforce the contract, and further stated as follows: " Immediately on receipt of your check for — 10 bales, our invoice of the 3rd instant, we are ready to ship you another — 10 bales, part of 50 bales which we are now holding for your account, in our warehouse."

Having received no reply to this communication, plaintiff wrote to the defendants again on the twenty-ninth of October stating in substance that its invoice of October third called for a cash payment of $5,150, which it had not received and that it was disappointed and insisting on a remittance therefor to reach it not later than November fifth and that it was prepared to make delivery under the contract in question whenever defendants were ready for the goods but that the terms on further deliveries would have to be in cash in advance and that as indicated in its letter of October twenty-third the goods had been put aside for defendants on plaintiff's invoice of September nineteenth and that it expected defendants to complete taking delivery thereof not later than November twenty-fifth. It was not shown that defendants answered either of these letters. The vice-president of the plaintiff testified that he had a conversation with defendant Harry Frankel over the telephone on October twenty-ninth concerning the payment of the overdue invoices of October third and that Frankel stated in substance that it would be paid in a few days and witness asked him " what about the balance, ordering out the balance on your other contract? " to which Frankel answered " We have cancelled that contract." and the witness replied that he knew nothing about any

cancellation and that the plaintiff had not accepted a cancellation and expected defendants to live up to it, but that before plaintiff would deliver any goods on the contract of September nineteenth, it would " expect payment in accordance with the terms thereof, cash before delivery." The invoice of October third was paid on the sixth of November thereafter. The manager of the burlap department of the plaintiff testified that on November sixth he had a conversation with Harry Frankel, in which the latter said he could not take the goods because the government was arbitrary with the defendants and they had to be arbitrary with the plaintiff and that the defendants could not " use the goods now, we can't take them off," to which the witness replied that the defendants would have to order the goods out before November twenty-fifth or plaintiff would sue them for the difference and that Frankel answered, " I don't take them out," and that he then said to Frankel that if defendants should give him an order, they should send the money over or plaintiff would not execute it. The witness further testified that with respect to prior orders between the parties, plaintiff delivered the goods when the defendants ordered them out but did not ship until they received shipping instructions; that this was the third contract between the parties and that the first was on the sixteenth or seventeenth of September for ten bales and the second was on the eighteenth for ten and that the plaintiff as directed by defendants made delivery under the first contract in installments of five bales each and paid the freight on the first ten bales, and that delivery under the second contract was delayed at the request of the defendants who said they were not ready to send the order and when plaintiff later received instructions it shipped the goods under that order. At this point the vice-president of the plaintiff stated in answer to a question by one of the jurors that the plaintiff would not have shipped the goods under this contract if they were ordered out by the defendants when they were in default in paying on prior invoices; and when asked whether plaintiff would expect the money in advance if the goods had not been delivered, he answered that " net cash " meant " cash before delivery from the warehouse," but that plaintiff would have delivered upon payment of the cash in advance and that Frankel was

so informed on the sixth of November after the former invoice had been paid. Plaintiff then rested and the defendants moved to dismiss the complaint on the ground that a cause of action was not shown. The motion was granted and plaintiff excepted.

It is contended in behalf of the plaintiff that even if it was its duty to deliver the goods at the defendants' place of business specified in the contract as 318 East Thirty-second street, New York city, to which it was required by the contract to pay the freight, still under its reserved authority to revise the terms of payment, it could, as it did, require payment to be made in advance before it shipped the goods. That contention, I think, is unsound for that would be requiring the defendants to take the risk of subsequently obtaining the goods from the plaintiff. The reasonable construction of those provisions of the contract is, I think, that the authority of the seller to revise the terms of payment was intended to relate to terms of payment involving some period of credit after delivery. On the plaintiff's theory it could maintain with equal force that it might have exacted payment a month in advance of delivery. Plaintiff also contends that the words, "Goods to be taken out prior to Nov. 25th, 1918," meant and were understood to mean that the goods were to be delivered upon receipt of shipping orders from the defendants. It does not claim that defendants were to call and take the goods but that it was not obliged to deliver them at the place of business of defendants until it received shipping orders. In view of the other provisions of the contract obligating plaintiff to pay the freight to 318 East Thirty-second street, New York city, I think it should not be so construed as to relieve plaintiff, if it desired to put defendants in default, of tendering delivery of the goods, not ordered out by the defendants prior to November twenty-fifth, to the defendants at their place of business on that day, or if it desired to place the defendants in default with respect to ordering out the goods in installments of ten bales each every ten days after the completion of the former order, it should likewise have tendered the delivery of those installments of goods at the place of business of the defendants to which it was obligated to pay

the freight. This is not a case in which the plaintiff could not make delivery without shipping instructions. The contract expressly provided where and when deliveries were to be made, and, therefore, in order to put defendants in default and afford it a basis for an action for the purchase price or for a breach of contract, it was incumbent on the plaintiff to tender deliveries at the place of delivery specified in the contract. (*British Aluminium Co., Ltd.,* v. *Trefts,* 163 App. Div. 184.) The plaintiff also contends that the evidence shows that the defendants plainly gave it to understand that they would not accept delivery if tendered, and that, therefore, it was unnecessary to tender delivery of the goods which would have involved considerable expense since they were bulky. This contention is predicated on the evidence showing that the defendants were desirous of canceling the contract and intended to cancel it; but the plaintiff did not acquiesce in the request of the defendants for the cancellation of the contract or accept a cancellation thereof and the defendants did not say they would not accept the goods if delivery were tendered. The evidence does not show an unequivocal determination on the part of the defendants not to take the goods but, at most, shows that they were guilty of a breach of their contract in failing to order out the goods in installments as provided in the contract. It appears, however, that the reason they assigned for not ordering the goods out was not that they would not ever take the goods but that they could not take them at the time the conversations were had. Respondents contend that the plaintiff breached the contract by refusing to make any delivery thereunder until after the former invoice was paid and that thereby they were relieved from their duty to order the goods out. This point, I think, is well taken. The former contract is referred to in this contract for the purpose only of fixing the time when deliveries should commence, and, therefore, the plaintiff had no right to insist, as it did, that it would not make any delivery under this contract if ordered until after the invoice of the goods sold under the former contract was paid. Counsel for the appellant argues that the former contract could not be deemed completed until the goods sold and delivered thereunder were paid for; but that is not the sense in which the word " completion " is used in this

contract. If it had been intended that the deliveries under this contract should not commence until all deliveries under the former contract had been made and paid for it is reasonable to assume that the provision would have been so phrased as to show more clearly such intent. Moreover, plaintiff alleges full performance of the contract on its part excepting such terms and conditions as it has been prevented from performing by the failure and refusal of the defendants to perform, and alleges that it duly tendered delivery of the burlap, in accordance with the contract, to the defendants on the fourth of October and at various times thereafter prior to the expiration of the time defendants agreed to receive and accept it and that the defendants refused and failed to receive, accept or pay for the same. It having been the duty of the plaintiff under the contract to tender delivery of the goods at the place of business of the defendants, which it failed to show, it did not show a due tender of delivery in accordance with the provisions of the contract as alleged, and on this ground also the complaint was properly dismissed. It follows that the judgment should be affirmed, with costs.

DOWLING and MERRELL, JJ., concur; CLARKE, P. J., and GREENBAUM, J. dissent.

CLARKE, P. J. (dissenting):

After the formal and repeated refusals of the defendants to order the goods out or to take them, and their formal attempt to cancel the contract, I do not believe it was incumbent on plaintiff to go through the idle ceremony of carting these bulky goods over to New York and back again. In so far as the decision is based upon a failure to show a physical tender, I dissent.

Judgment affirmed, with costs.