D. GEORGE DERY, Respondent, *v.* SAMUEL A. BLATE and Another, Copartners Doing Business under the Firm Name and Style of BLATE BROS. & LOVE, Appellants.

First Department, June 6, 1924.

Sales — action by seller to recover damages for failure of buyer to accept goods sold — contract, on printed form, contained clause on back thereof that amount of credit to be extended might be determined by seller — at bottom of contract and below signatures there was printed notice that contract was subject to rules printed on back — credit clause on back of contract not, as matter of law, part thereof — issue of fact raised as to whether credit clause was part of contract — seller did not have right, if credit clause was part of contract, to demand cash before delivery — allegation of·appropriation of part of goods to contract not sufficient.

In an action by a seller of cloth to recover damages for the refusal of the buyer to accept the goods, in which it appeared that the contract used was a printed form, it cannot be held, as a matter of law, that the clause printed on the back of the contract to the effect that the amount of credit to be extended to the buyer might be determined at any time by the seller, is a part of the contract, where the only reference to the printed matter on the back of the contract is contained in a printed notice at the foot of the contract and below the signatures of the parties to the effect that the contract was subject to the rules printed on the back thereof.

But, under the allegations of the complaint that the extension of credit was a part of the agreement, which was denied by the defendants, an issue of fact was presented to be determined by the jury, as to whether such a provision was a part of the contract agreed upon.

Assuming that the contract between the parties included the clause on the back thereof relating to the extension of credit, the plaintiff did not have the right under that clause to refuse to extend any credit to the defendant and to demand that the defendant pay cash for the goods before delivery.

Furthermore, the complaint is fatally defective in that the allegation by the plaintiff that he appropriated to the contract certain goods does not contain an allegation that all of the goods which were by the terms of the contract to be delivered on the date of the alleged appropriation were so appropriated to the contract.

APPEAL by the defendants, Samuel A. Blate and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of April, 1923, denying the defendants' motion for judgment on the pleadings.

*Joseph & Zeamans* [*Harold R. Zeamans* of counsel], for the appellants.

*Joseph P. Segal* [*I. Gainsburg* with him on the brief], for the respondent.

DOWLING, J.:

This is an appeal by defendants from an order made at Special Term denying defendants' motion for judgment on the pleadings, consisting of the complaint as limited by the bill of particulars, and the answer.

The action is by a vendor against the vendee under a written agreement of sale for damages for non-acceptance of the goods.

The complaint herein alleges that about January 28, 1920, plaintiff and defendants entered into an agreement whereby plaintiff agreed to sell and deliver, and defendants agreed to receive and accept, upon the terms and conditions in said agreement provided, and to pay for same in accordance with said agreement, 75 pieces of colored satin, described as quality 165, 39 inches wide, and about 55/60 yards in length, at the price of $3.10 per yard, and 100 pieces colored taffeta, described as quality 415, 35 inches wide and about 55/60 yards in length, at the price of $2.65 per yard, upon terms of payment 6/10-60, delivery to be made one-fifth each in the months of June, July, August, September and October, 1920. The agreement further provided: " The amount of credit to be extended to buyer may be determined at any time by seller." It was alleged that by said provision and by said agreement it was intended, contemplated, understood and agreed between plaintiff and defendants that defendants would at any time on request of plaintiff furnish to him a statement of their financial condition and such other information as should be required by him to determine the amount, if any, of credit to be extended to defendants by plaintiff. After the making of the agreement aforesaid, it was modified by mutual consent in respect of time of delivery, and it was agreed that one-fifth of each quantity should be deliverable in May, 1920. On or about and between the 1st day of May, 1920, and the 29th day of May, 1920, plaintiff repeatedly requested of defendants a statement of their financial condition in order to determine the amount of credit which should be extended by him to defendants, but the latter neglected and refused to furnish same. About the 29th of May, 1920, plaintiff set apart and appropriated to the said agreement twenty pieces of the aforesaid colored taffeta, quality 415, at two dollars and sixty-five cents per yard, notified defendants thereof and again requested defendants to furnish plaintiff with the necessary information and statement of financial condition to enable him to determine the amount of credit to be extended to defendants, and offered and tendered delivery of said goods immediately upon adjusting and determining said credit; but defendants failed, neglected and refused to comply with said notice and request, and by reason thereof the plaintiff was prevented from determining

the amount of credit to be extended to the defendants, and elected and determined to cancel and rescind the terms of payment and credit provided in said agreement, and duly notified defendants thereof and that he required payment in cash for the delivery of the goods. On or about July 8, 1920, plaintiff set apart and appropriated the July installment of the goods described in said agreement, and held for account of defendants, to wit, fifteen pieces, quality 165, at three dollars and ten cents per yard, and 20 pieces of quality 415, at two dollars and sixty-five cents per yard, and notified defendants thereof and offered to deliver same to defendants for cash and requested defendants to take in, receive and accept the goods and pay cash therefor; but defendants neglected and refused to do so, and stated that they would not take in the aforesaid goods or any of the goods provided in said agreement, and repudiated said agreement. It is also alleged that plaintiff duly performed all the terms and conditions of said agreement on his part to be kept and performed, except as he was prevented from so doing by the aforesaid acts and conduct of defendants; that plaintiff was at all times ready, able and willing to carry out the terms and conditions of said agreement on his part and offered so to do, and demanded performance thereof by defendants; that by reason of the premises plaintiff has been damaged in the sum of $13,537.50 for which amount with interest judgment is demanded.

The answer denies that the agreement provided that the amount of credit to be extended to the buyer might be determined by the seller; and also that what was intended by said provision was as alleged in the complaint; denies the modification as to delivery of an installment in May; denies the allegation as to request for a financial statement; denies the allegations as to due performance and plaintiff's readiness to carry out the terms and conditions of the agreement; denies on information and belief the allegations as to appropriation; and further denies the allegation as to damage.

As a separate defense, the answer alleges an agreement substantially as alleged in the complaint, without, however, the modification as to the plaintiff's right to determine the amount of credit; it alleges that plaintiff refused to deliver any of the merchandise, and never delivered, tendered or offered to defendants any portion thereof; and avers that defendants have duly performed all things on their part to be performed.

The bill of particulars served by plaintiff set out a copy of the agreement sued upon and which was signed by B. Love on behalf of defendants. It is as follows:

" Member of the Silk Association of America.

" Order No. 1509 and 1510.     New York, *January 28th,* 1920.
" D. G. Dery,
    " 381–385 Fourth Ave.
               " Confirmation of Order.
" Duplicate
" Placed by Messrs. Blate Bros. & Love, New York City, with D. G. Dery
    " Manufacturers of Silks.

"All orders accepted subject to release in case of the mills being unable to fill, in consequence of Fire, Strikes or any accident or incident beyond their control.
" Terms:   6/10/60.
" Length of Pieces:   Abt. 55/60 yds.
" Delivery at New York 1/5 each June, July, Aug., Sept., Oct.   *   *   *

    " If this order is not correct in every particular please advise at once.

| " Pieces | Width | Article | Quality | Price per Yard. |
|---|---|---|---|---|
| " Order # 1509. | | Colored Satin | 165 | $3.10 |

" 75 pcs.           39″
                  "Assortment
   " Black 6187–10 Pcs. Navy 6975  —  20 Pcs.
   " Nigger 413–10  "    Black      —   35 "

                       75 Pcs.
         " Gros de tours edges.
" Order # 1510
   " 100 Pcs.     35″     Colored Taffetas    **415**        $2.65
                 "Assortment.
     " Jap. Blue 6187     —   10 Pcs.
     " Nigger 413        —   10   "
     " Navy 6925        —   80   "

" Received                  100 Pcs.
" Jan. 30, 1920.
        " Please Sign Here          B. LOVE.
    " Subject to Rules of the Silk Association of America as Printed on Back."

On the reverse side of this agreement are printed " Rules to govern transactions between buyers and sellers of Broad Silks in

the United States of America.    As approved by the Silk Association of America, August 9, 1911."

Among these rules is the following:   " 8. The amount of credit to be extended to buyer may be determined at any time by seller."

The learned court at Special Term held that the " question as to whether the printed provision was intended by the parties to be a part of the contract would depend upon oral statements made at the time of execution, if any such were made."

This contract is upon the printed form used by plaintiff, and evidently was prepared under his direction.   The original contract demonstrated this even more clearly than the printed copy.   It must be noted that the words, " subject to Rules of the Silk Association of America as printed on Back," appear in small type at the bottom of the contract form, and below the place where the defendants' representative signed the contract.   It is only by this reference that the rules printed upon the back of the contract can be deemed to be made a part thereof; and in view of the position in which the sentence is found, I do not believe it can be held to be necessarily a part thereof, in the absence of any appropriate allegation that it was expressly made a part of the contract.   It seems to me very significant that no steps were ever taken by plaintiff himself to demand a statement from defendants as to their financial condition. The contract was made January twenty-eighth.   It was not until May first that plaintiff's factors wrote to defendants as follows:

" Messrs. BLATE BROS. & LOVE,                    *May* 1, 1920.
          " 37 West 26th Street,
                    " New York City.

" DEAR SIRS.— D. G. Dery, for whom we act as factors, informs us that he has an order from you.   So that we shall be in a position to treat you liberally as regards line of credit for the present season, we ask that you take us into your confidence and submit a late statement of your financial condition.

" When doing so, kindly use the form enclosed, as well as answer the questions and inform us at which bank you maintain your account.

" We await your reply, and remain,
                    " Yours very truly,
                              " WILLIAM ISELIN & COMPANY,
" F. N.                              (Signed)   FITZGERALD."

It will be noted that there is here no intimation that the defendants were under any contractual obligation to give a financial statement to plaintiff.   The factors wrote further letters to defendants asking for a statement of their financial condition on May sixth, fourteenth, twentieth and twenty-seventh; but in none of these was there any

First Department, June, 1924.                    [Vol. 209

suggestion that defendants were under any contractual obligation to furnish a financial statement to plaintiff. Furthermore, even under the rules of the Silk Association, it was the seller who was to determine the amount of credit to be extended and not his factor. The foregoing letters are all set forth at length in the plaintiff's bill of particulars herein. But, under the allegation of the complaint that the extension of credit was a part of the agreement, which was denied by the defendants, an issue of fact was presented to be determined by the jury, as to whether such a provision was a part of the contract agreed upon. (See *Sturtevant Co.* v. *Fireproof Film Co.*, 216 N. Y. 203.)

The next question presented for consideration is whether plaintiff, assuming the contract between the parties was as he claims, had the right to change the terms of sale so as to give no credit and require cash. A similar question was presented in the case of *Raw Silk Trading Company, Inc.,* v. *Katz* (201 App. Div. 713), which was an action by a seller to recover damages for breach of a contract of sale of silk based on the ground that the buyer had refused to accept the goods and pay cash therefor, as demanded by the seller. It appeared in that case that the contract, which was upon a printed form prepared by the plaintiff, provided for terms of credit; that in a separate paragraph the plaintiff had rubber-stamped on the contract the following: " Subject to credit limit at seller's discretion; " and that the seller contended that it had the right under the terms of the contract to withdraw all credit and demand payment in cash on delivery. Mr. Justice GREENBAUM, writing for a unanimous court, said (at p. 715):

" It is fairly debatable as to what is meant by the words ' credit limit.' They might refer either to a limitation of credit in respect of the quantity of goods to be delivered, thus limiting the amount or extent of credit to be given to the customer upon the terms mentioned in the contract as to time of payment, or they might refer to a limitation of the time of the credit for the amount of the goods mentioned in the contract. But upon either construction of the contract, the fact is that the act of the defendant resulted in giving no credit whatever, since it demanded cash on delivery, which could hardly be regarded as a *limitation of credit.*

" Considering that the plaintiff drew the contract, and taking into account the allocation of the phrase under discussion, it seems to us that its purpose was to serve solely as a protection to the seller against any attempt to fix a liability upon it for failure to deliver, when in the plaintiff's discretion it determined to limit the credit of the buyer.

" In other words, it was a condition of the sale that the seller

had the option to notify the buyer that it had exercised its discretion to limit the credit, and if in that case the buyer declined to accept the goods upon the changed terms, the plaintiff would be absolved from further performance. Any other construction would imply a positive obligation on the part of the defendants to pay the purchase price within any period, less than ninety days, as the buyer might in its discretion determine, even if that discretion should be exercised, as it was in this case, to the extent of wiping out all credit and of demanding spot cash upon delivery. If any such intention had been in the minds of the parties when the contracts were made, it would unquestionably have been expressed in unmistakable language."

The complaint and supporting affidavits, which alleged the breach of the contract in that case as consisting in the failure of the buyer to receive and pay for the goods in cash, were, therefore, held not to state a cause of action, and the writ of attachment issued against the defendant was vacated.

In the case at bar the plaintiff went still further, for he not only notified defendants that he had rescinded the contract, but he advised them that " he required payment in cash for the delivery of the goods," that is, cash before delivery, upon which he had no right to insist. (*Fulton Bag & Cotton Mills, Inc.,* v. *Frankel,* 196 App. Div. 701; affd., without opinion, 234 N. Y. 580.)

The case of *Peierls, Buhler & Co., Inc.,* v. *Newburger* (202 App. Div. 471), relied upon by the learned court at Special Term, is clearly distinguishable from the case at bar, for there the credit clause was as follows: "All terms and limits of credit specified therein were subject at all times before and after acceptance thereof to be changed or withdrawn by Peierls, Buhler & Co., Inc., to whom all bills were payable." That clause expressly gave power to the sellers to *withdraw all terms and limits of credit,* which is not the present case.

Furthermore, the complaint demonstrates that plaintiff had himself failed to comply with the terms of the contract, as he himself alleges them. He sets forth that the original contract was modified so that " one-fifth of each of the aforesaid quantity shall be deliverable in May, 1920." He alleges that he set aside and appropriated, on May twenty-ninth, twenty pieces of colored taffeta, quality 415, at two dollars and sixty-five cents per yard, and notified defendants thereof; this was one-fifth of the taffeta called for by the contract. But there is no allegation that he ever set aside and appropriated in that month fifteen pieces of colored satin, quality 165, at three dollars and ten cents per yard, which is one-fifth of the total amount of satin contracted to be sold and

which he was also required to deliver in the month of May. Nor is there any allegation anywhere in the complaint that the said one-fifth of the satin, required to be delivered in May, was ever set apart and appropriated to the contract. Nor is there any explanation or excuse for the failure to tender the fifteen pieces of satin of the May delivery, which in itself is fatal to a recovery. (*Finsilver, Still & Moss, Inc.,* v. *Lorenz,* 204 App. Div. 810.)

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion for judgment on the pleadings dismissing the complaint herein granted, with ten dollars costs.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.