IN THE MATTER OF THE APPLICATION OF HENRY L. HER-MANCE et al., Appellants, v. THE BOARD OF SUPERVISORS OF ULSTER COUNTY, Respondent.

The provision of the act to "extend the powers of boards of supervisors," etc. (§ 5, chap. 855, Laws of 1869), which authorizes boards of supervisors, on the recommendation of the County Court, "to correct any manifest, clerical, or other errors in any assessments or returns," was not intended to, and does not, subject all assessments to review or permit a correction of all errors, but simply of those which are "manifest"— i. e., apparent by an examination of the assessment-roll or return, needing no extrinsic evidence to make them clear, and which are also "clerical or other errors in the assessments or returns"—i. e., some error of form in the assessment-roll, not an error of the assessors in making the assessment, nor any substantial error of judgment or of law.

The provision of the amendatory act of 1871 (chap. 695, Laws of 1871), directing the refunding of any tax "illegally or improperly assessed or levied," did not enlarge or in any manner affect the power to correct errors conferred by the original act.

Accordingly, held, that a County Court had no power under the amendatory act to order a board of supervisors to refund a tax paid by the applicants, alleged to have been illegally assessed

People v. Supervisors (65 N. Y., 300), distinguished and limited.

(Argued December 11, 1877; decided December 18, 1877.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, affirming an order of the County Court of Ulster county denying an application, under chapter 695 of the Laws of 1871, for an order requiring the board of supervisors of Ulster county to refund a tax alleged to have been illegally assessed and collected. (Reported below, 10 Hun, 545.)

A petition was presented to the court, upon due notice to the board of supervisors, alleging that the petitioners had been illegally and improperly assessed for $10,000 personal property, which they did not own or possess, and had been compelled to pay thereon a tax of $600.40. The facts were not contradicted, but the application was opposed and denied on the sole ground that the court had no jurisdiction under the construction given to the statute by the Supreme Court.

*A. Schoonmaker, Jr.*, for appellants. The County Court had jurisdiction to grant the application. (*In re N. Y. Catholic Protectory*, 8 Hun, 91; *In re Farmers' Nat. Bank of Hudson*, N. Y. S. C. R., 383; *People ex rel. Pell* v. *Board Supervisors Ulster Co.*, 63 Barb., 83; 65 N. Y., 300.) The applicants were entitled to the relief claimed. (4 Hun, 446; 8 id., 91; *Nat. Bank of Chemung* v. *City of Elmira*, 53 N. Y., 49; *Mygatt's Case*, 15 id.; 3 Wal., 573.)

*J. M. Van Wagoner*, for respondent. The County Court had no jurisdiction. (*People ex rel.* v. *City of Oswego*, 6 T. & C., 673, 680; *Barhyte* v. *Shepherd*, 35 N. Y., 255; 5 Hun, 616.) Chapter 695 of the Laws of 1871 was not designed to cover a case of this kind. (*In re Hudson City Savings Inst.*, 5 Hun, 612; *In re City Protectory*, 8 id., 91; 53 N. Y., 53, 58.) The alleged error was not a "manifest clerical or other error," that could be corrected by these proceedings. (*In re Farmers' Bank*, 1 T. & C., 385.)

ALLEN, J. There is apparently great diversity of opinion as to the true interpretation of the statute under which these

proceedings are instituted. (Laws of 1869, chapter 855, as amended by chapter 695 of the Laws of 1871, and the jurisdiction conferred by it upon county courts and boards of supervisors.) The courts are certainly not in entire harmony, as is very manifest from the reported decisions. (*In re Hudson City Savings Institution*, 5 Hun, 612; *In re N. Y. Catholic Protectory*, 8 id., 91; *In re Farmers' National Bank*, 1 N. Y. S. C. R. [T. & C.], 383; *People* v. *Supervisors of Ulster Co.*, 65 N. Y., 300, reversing same case reported; 63 Barb, 83.)

Doubtless the apparent disagreement between the learned judges who have had the statute under consideration, is to be attributed, measurably at least, to the difference in the precise questions made in the several cases. I find no evidence in any of the reported decisions, that the precise question now before us has been made by counsel or considered by the court, although there are expressions to be found in some of the opinions, and notably in that of Commissioner REYNOLDS in *People* v. *Supervisors of Ulster Co.*, *supra*, favoring the views of the learned counsel of the appellants in this case, and of the largest jurisdiction in the county courts in reviewing the action of assessors. If it was in that case decided, as is claimed, that the County Court may, under the statute, sit in review of the action of assessors, and correct their errors of facts, and of law, or review assessments where no objection has been taken to the assessors' action, very important results must necessarily follow, and the jurisdiction conferred upon county courts by a brief statute entitled " An act to extend the powers of boards of supervisors, except in the counties of New York and Kings," will be found to devolve more of duty and labor, and a greater power over the action of those charged with the administration of the laws for the assessment and collection of taxes, and the revenues and resources of municipalities, than could have been in the mind of the Legislature. If it has been decided by the Commission of Appeals, in the case quoted, as is claimed, and such is the just interpretation and operation of the act,

then, as suggested substantially by Justice JAMES in *Hudson City Savings Institution* (*supra*), the County Court has full power without limit, as to the time or restriction, as to the nature of the errors suggested, to review the action of the assessors, and to pass upon the legality or validity of any and all assessments, and adjudge taxes to have been "illegally or improperly" assessed and levied by reason of error in the assessment, and order them to be refunded, and thus the revenues of the county will be subject to the judicial action of the County Court.

I do not understand the Commission of Appeals to have adjudged but the one point, viz : That the statutes of 1869 and 1871 were retroactive in their operation, and gave county courts jurisdiction in respect to taxes assessed and collected before their passage. Commissioner REYNOLDS assumes that the vices and objections alleged against the taxes assessed upon and paid by the applicant were within the purview of the act, but his argument following the points made by counsel was addressed to the question, whether the act was entirely prospective in its operation, or operated upon past transactions as well; and Commissioner DWIGHT in his elaborate, dissenting opinion, concurred in by Chief-Commissioner LOTT, does not touch any other question. It does not appear that counsel suggested that if the act was retroactive in its operation the case was not within its provisions. If the question, whether the act had respect to mistaken, erroneous, or illegal assessments actually made, had been made, and intended to be decided, it would have received more consideration than it did from the court, or than the subordinate question as to the retroactive effect claimed for it. I am of the opinion that the question as to the character of the objections to a tax assessed and levied, which may be considered by the county courts, is *res nova*, and now for the first time presented, unless it may have been in *The Matter of the Farmers' National Bank* (*supra*), the court in that case holding that the omission of assessors to deduct the assessed value of the real estate of a bank from the value of

its shares of stock, was not a "manifest clerical or other error," to be corrected under the statute of 1871.

Section five of the original act of 1869 gave authority to the boards of supervisors, on the recommendation of the County Court, " to correct any manifest, clerical, or other error in any assessments or returns made by any town officer to such boards of supervisors, or which shall properly come before such board for their action." This clause has not been changed in any way. The amendment of 1871 merely added the clauses directing the refunding, upon the order of the County Court, of any tax "illegally or improperly assessed or levied," for an appeal from the order of the court and for adjusting and apportioning the tax which should be imposed to raise the money to make such restitution. The limit of the power to correct errors is now the same as it was before the amendment. The added clause, directing the refunding of a tax "illegally or improperly" assessed or levied, does not enlarge the class of errors the correction of which had been provided for. The Legislature simply designated a tax imposed upon an erroneous assessment as "illegal and improper," and upon a correction of the assessment for a "manifest, clerical, or other error" in the assessment or return, the tax is to be refunded as "illegal or improper." The question then recurs, what class of errors may be corrected upon the recommendation of the County Court?

1. It is evident that the Legislature did not intend to subject all assessments to review under the act and upon every question that could arise affecting its legality and propriety. If it had been intended to permit a correction by this new tribunal of all errors of judgment, errors of fact, errors of law, jurisdictional questions, why were certain errors specified and others of more importance omitted? It would have been very easy to have given general power to correct "all errors" in the assessment or return to the board of supervisors.

2. The errors which may be corrected are "manifest"

errors; not errors which may be shown to have been committed by extrinsic evidence or may be proved to the satisfaction of the court. No provision is made for any inquiry, the production of proofs, or any trial. There would be a difficulty in determining upon proof the propriety of any tax, especially in respect of personal property after the lapse of years, when the local officers would have been changed and all the circumstances forgotten by all but the applicant. The complainant would have the public at great disadvantage in such a controversy. But "manifest," as used here, means something which is apparent by an examination of the assessment-roll or return, needing no evidence to make it more clear. That which is open, palpable, and, I might add, incontrovertible. It is synonymous with evident, visible, plain, obvious to the understanding from an examination of the roll or document; or, at the most, only requiring a mathematical calculation to demonstrate it.

3. The errors are "clerical or other error in the assessment or returns." It is not errors of the assessors or in making the assessment, but in the "assessment or returns made to the board of supervisors," — that is, in the assessment-roll, the record and return of the action of the assessors. "Clerical" errors are mentioned to distinguish them from, and exclude errors of substance, of judgment, or of law. It would be strange if the Legislature intended to embrace errors affecting the merits of the assessment, the jurisdiction of the assessors or their official action, that such care should have been exercised in specifying one class of errors, that the least important, and ignoring all others. This would be inconsistent with the ordinary forms of legislative expression. The "other" errors intended are those of the same or like character as those particularly mentioned — some error not technically clerical — but a mistake of the same general nature, and not any more intimately connected with, or affecting the propriety or legality of the assessment, or the action of the assessors. Some error of form. This should be the interpretation of the act within the familiar maxim "*noscitur a*

*sociis,"* so frequently applied in the construction of deeds, wills and other written instruments, as well as of statutes. (*Rossiter* v. *Rossiter*, 8 Wend., 494 ; *Corning* v. *McCullough*, 1 Comst., 47, 69; Broom's Legal Max., 565, *et seq.*)

It is said to be a good rule of construction that " when an act of parliament begins with words which describe things or persons of an inferior degree, and concludes with general words, the general words shall not be extended to any thing or person of a higher degree;" that is, " when a particular class is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class." (*Archb. of Canterbury's Case*, 2 Coke, 46 *a* ; *Lyndon* v. *Stanbridge*, 2 K. & N., 51; *Reg.* v. *Edmundson*, 2 E. & E., 83; *Gibbs* v. *Lamen*, 30 L. J. Ch., 170; Broom's Legal Max., 625.) The words, " or other," following " clerical," do not enlarge the class of errors of which the County Court and the board of supervisors have jurisdiction under the statute, so as to include errors of substance.

4. There was a convenience if not a necessity for precisely the law as enacted, as thus interpreted, but no occasion for one more extensive in its operation or so universal in its provision, as to embrace every alleged error or illegality in an assessment. Ample provision is made by other laws for the protection of the tax-payer against other errors or irregularities. The law prescribes the duties of assessors, the time when and the manner in which they shall be performed. It also gives every person an opportunity to be heard, and the common law will redress errors upon *certiorari*. If the assessors fail in their duty, and omit to give the tax-payers an opportunity to be heard, power is conferred upon boards of supervisors to review and correct the assessment. (1 R. S., 391 *et seq.*; Laws of 1851, ch. 176.) So, too, the Legislature have from time to time, by special laws which need not be quoted, given power to boards of supervisors to re-examine assessments in particular cases, as upon banks, and refund taxes illegally imposed, which would not have been necessary

if the act under review has the potency and extent of application claimed for it ; and banks claiming to have been illegally taxed, instead of waiting upon the discretion of the boards of supervisors, might appeal to the County Court, and establishing their claim might take as a legal right, and upon a judicial investigation, what the supervisors might deny. Public policy requires that after taxpayers, those over whom and whose property the assessors have jurisdiction, have been heard, or have had an opportunity to be heard, and have not sought redress in the appropriate form for any supposed error, their mouths should be closed, and the judgment and action of the assessors treated as final. It certainly is against the public interest and policy to permit the taxes collected or paid to be the subject of perpetual litigation, at any time to suit the convenience of the taxpayer, after he has once been heard by the proper tribunal, or has waived the privilege of a hearing by not appearing. If the assessors act within their jurisdiction — that is, if they have jurisdiction of the person and property of the individual assessed — their action is final; if they have no jurisdiction, their acts are void. (*Nat. Bank of Chemung* v. *Elmira*, 53 N. Y., 49.)

The Legislature will not be presumed, except upon the clearest and plainest expression, to have intended an infraction of the principle of public policy before referred to, or to have ignored the maxim affecting the public welfare, "*interest reipublicœ ut sit finis litium.*" This maxim should apply with peculiar force to all matters affecting the revenues of the State and the collection of taxes. To give the statute the effect claimed for it by the learned counsel for the appellants, would be to revolutionize our entire system of taxation. The appellants did not make a case within the statute, or show any manifest clerical or other error in the assessment or return. Their complaint is of an illegal assessment which should have been determined by the assessor, whose power it was to determine whether the appellants, residents of the town and subjects of taxation, " were liable to be assessed "

upon the personal property held and owned by them, or whether by reason of debts owing by them, or for other cause, their personal property was exempt from taxation.

The order should be affirmed.

All concur, except EARL, J., not voting, and RAPALLO, J., absent.

Order affirmed.