(Hamilton Co., O., Common Pleas.)

## HARRIETT O. EVANS v. STATE OF OHIO.

---

*Christian Science—Does not fall within law regulating medical practice in Ohio—*

The statute, sec. 4403f, designating the classes of persons who shall be regarded as practising medicine or surgery within the meaning of the act of February 26, 1896 (sec. 4403c), requiring a certificate by the state board of medical registration and examination, and the recording of the same, before any one shall be permitted to practice medicine or surgery, does not apply to persons "who, for a fee, prescribe, direct, or recommend for the use of any person * * * for the treatment, cure, or relief of any wound, fracture, or bodily injury, infirmity or disease," a "system known as christian science."

---

HOLLISTER, J.

The act of the general assembly, passed February 26th, 1896, (Bates Revised Statutes, sec. 4403c) provides that no person shall practice medicine, surgery or "midwifery" in any of "its" branches in this state, without having left for record with the probate court of the county in which such person resides, a certificate of the state board of medical registration and examination that the person is entitled to practice.

The classes of persons to which the act is applicable are defined in sec. 4403f.

"Any person shall be regarded as practicing medicine or surgery, within the meaning of this act, who shall append the letters, M. D. or M. B. to his name, or, for fee, prescribe, direct or recommend for the use of any person any drug or medicine or other agency, for the treatment, cure or relief of any wound, fracture or bodily injury, infirmity or disease."

Exceptions are made not pertinent to this inquiry. Harriet O Evans, the

plaintiff in error, was convicted in the police court of Cincinnati, on a charge of violating this act, in that, without having such certificate and record of the same, she did at Cincinnati, "for a fee, to-wit: the sum of one dollar, prescribe, direct and recommend for the use of one, Thomas McDowell, a certain agency, to-wit: a system known as christian science", for the treatment, cure and relief of a certain bodily infirmity or disease, the name and nature of which were unknown to the informant.

Prior to the submission of the cause to the jury, the defendant below, the plaintiff in error here, moved to quash the information because it did not show what other agency was alleged to have been used by the defendant, and therefore did not duly allege a violating of any statute of Ohio. She also demurred to the information, because the facts in it stated do not constitute any offenses against the laws of Ohio. The motion and demurrer were over-ruled. After the verdict, the defendant moved in arrest of judgment, which was overruled, and also for a new trial, because the verdict was not sustained by sufficient evidence, and was contrary to law, and because the court erred in its charge to the jury. This motion was also overruled, and the judgment of the court was entered imposing a fine upon the defendant below. She then filed her petition in error in this court seeking to reverse the judgment, alleging many grounds of error, among which it may be necessary to notice at this time only the following assignments of error:

That the police court erred in overruling the motion to quash the information; in overruling the demurrer to the information; in overruling the motion in arrest of judgment, and in overruling the motion for a new trial based on the claim that the verdict was not sustained by sufficient evidence.

If the defendant was guilty of any offense under the laws of this state, what was it? For the purposes of the demurrer, it is immaterial whether the act with which the defendant was charged was something in its very na-ture injurious, or was an offense punishable at common law, or was, on the contrary, an act highly praiseworthy in itself. If it was an act prohibited by the statute law of Ohio it was an offense, otherwise it was not.

The statutes will be searched in vain for any direct provision against using for purposes of bodily healing, a "system known as christian science".

If such an act is an offense, it must be read into some existing statute, or necessarily inferred from its language. It is conceded by the prosecutor, that the state's case can only be maintained under such construction of the statute, 4403f, as will include within the words: 'other agency" a "system known as christian science", whatever that may be.

In the interpretation of a statute the court's sole duty is to ascertain, if possible, what the intention of the legislature was in enacting it. The many rules of construction which have been promulgated from time to time by courts of last resort, are valuable only so far as they may be of assistance in reaching that object. The rules are but the expression of the common sense which dictated them.

Given the words used, the context, the evils sought to be avoided, the remedies desired to be applied, the policy of the state touching matters of the kind in question, the nature of our institutions, other law on the same or similar subjects, the court seeks by such reasoning powers, observation and experience as he may have been endowed with or have acquired, to declare the will of the law-making power, and to enforce it when declared without regard to consequences.

The manifest object of laws regulating the practice of medicine and surgery is to protect the people of the state from injury from the ignorance of persons who have no adequate education or training, and from the designs of the evil minded. It is of no consequence, if it be true, that the legislation on the subject in Ohio was the result of the efforts of a number of physicians, who associated themselves for the purpose. The object of the law is good and should be carried

cut. Nor can it be doubted that the legislature has the right to definne the classes of persons to become subject to the restrictions imposed in order to effectuate the object sought to be attained. The question in each case must be, whether or not the class complained of comes within the meaning of the law. It would be helpful if the ccurt could take judicial notice of what the "system known as christian science" is, but for the purposes of the demurrer the court is totally in the dark as to what it was the defendant was practicing, for it is, cf course, urderstood, that the demurrer is argued and submitted, as is also the motion to quash, before any evidence is heard in the case.

It is contended by counsel for the defense that the words: "or other agency" following the words; "drugs or medicines" must mean something of a nature similar to those words, and he invokes the well known rule of construction of statutes: "General terms follcwing particular ones apply only to such perscns or things as are ejusdem generis with those comprehended in the language of the legislature." Schultz v. Cambrige, 38 Ohio St., 658 663; Lane v. The State 39 Ohio St., 312-313.

Striking illustrations of the application of the rule are cited by counsel. Queen v. Clewcrth, 4 B. & S., 926; Queen v. St. Gecrge, 9 C. & P., 483; Regina v. Reed, 28 Eng. Law & Eq., 133; State v. Sumner, 10 Vermont, 567; McDade v. People, 29 Mich., 50; Brooks v. Cook, 44 Mich., 617; In the matter of Hermance, 71 N. Y., 481; 2nd Coke, 46; Broome's Legal Maxims, 625.

It is not proposed to abandon that rule in this case, nor the other which requires that penal statutes shall be strictly construed. Denbow v. State, 18 Ohio, 11; Hall v. State, 20 Ohio, 8; Mitchell v. State, 42 Ohio St., 383-386.

But proceeding to a strict construction, it is clear that the legislature intended to prevent the unauthorized practice cf medicine and surgery. If "other agency" has the meaning claimed for it by the defendant, the section would not embrace that class cf persons who use the knife and saw upon the living human body.

To prescribe, direct or recommend any drug, medicine or article of similar class for the treatment, cure or relief of any wound, fracture or bodily injury, is doubtless a part of a surgeon's peculiar avocation. But his especial function is to operate with sharp steel instruments upon the living flesh, and lay bare the innermost tissues cf the human frame. Shall the ignorant or unprincipled person, armed with steel, be permitted to promiscuously slash and cut, because a construction of the statute, according to a certain rule does not cover his case? Surely not, and particularly when the very act was aimed at him.

It is remarked by Mr. Justice Swayne in U. S. v. Hartwell, 6th Wallace, 385, at page 396.

"The rule dces not exclude the application of common sense to the terms made use of in the act in order to avoid an absurdity which the legislature ought not to be presumed to have intended."

And Judge McIlvaine in Woodworth v. The State, 26 Ohio St., 196-197, in speaking of the rule says:

"It can be used only as an aid in ascertaining the legislative intent, and not for the purpose of confining the operation of the statute within limits narrower than those intended by the law maker." The suggestion it affords is "one of common sense."

The application of the rule, as the defendant would have it applied, would involve a construction of the statute totally destructive cf the legislative intent, and it is, therefore, not pertinent to this case.

But if the surgeon is to be included, it is evident that the words; "drugs or medicines" will not answer, and his case must be ccvered by the words; "other agency". If the language were; "Drugs, medicines, knife, saw, scalpel, lancet, probe cr what not", one would have no difficulty in getting at the unauthorized surgeon, although it must be admitted that he does not usually "prescribe, direct or recommend" the implements of his calling, but is rather more in actual

contact with his subject than these word imply.

It is therefore reasonably clear that the words; "practice medicine or surgery", were not used in any forced sense, but rather with their usual significance, and that the act was intended to embrace two classes of persons, those who use drugs or medicines, and those who, in cases of fractures, wounds, etc., use and must use some other agency, effective in that class of injuries.

Now, there is nothing in the information to show that the "system of christian science" is either drug, medicine or other agency of the kind described. Hence, this act does not make the practice of that system any offense. The demurrer should have been sustained.

A motion to quash a criminal information may be made, "in all cases when there is a defect apparent upon the face of the record, including defects  *  *  *  in the manner in which an offense is charged." (Revised Statutes, 7249)

It is certain that the ordinary individual, whose time and opportunity for reading are limited, has a most inadequate idea of christian science, and a still less intelligent conception of the working to the system when used in attempting to heal the sick The great majority of our people have doubtless never heard of christian science. Many people know something of it, but it may perhaps be safely asserted, that very few of them, not including those who are professors of the science, would be able to describe it in similar fashion. If the court is right in these assertions, it would be most difficult, if not impossible, to convey to the mind of the average juror, what was meant when the person he was about to try was charged with such an offense as the information describes  His intelligence could only be called into exercise when he was advised by the evidence what it was all about, and it is much a matter of speculation whether he would or could gather its full import even then. If, when the information was read to the jury the words:

"system known as christian science" made any fixed impression on their minds, the judgment of this court concerning the general information and capacity of the men of his generation, and of the average juror is sadly at fault.

This is not sufficient for a criminal information. The allegations must so describe the offense, "that the averments should make it certain that the act charged is the act forbidden by the statute." Rapalje's Criminal Procedure, sec. 89.

The facts should be stated "so that the nature of the offense charged may be easily understood by the jury." Wharton, 9th Ed. sec. 155-159; Bishop, New Criminal Law, sec. 785a.

The defendant having been defeated in these preliminary proceedings, the case was submitted to the jury on the evidence which will be gone into at this time, no further than to show the nature of the acts of the defendant which are claimed to come within the operation of the law.

Thomas McDowell was ill with typhoid fever, and had been prescribed for by a physician. He became rapidly worse. The defendant had been a resident of his house for years, and was asked by him to help him, or to do something for him. She began her ministrations on the 4th of November last, and continued them daily for six days. She had before, from time to time, been called by him and his wife, who is of the same faith, to treat them according to her peculiar method. She made no charge for her services, but accepted one day during the treatment, a silver dollar. given to her by Mr. McDowell.

The treatment which lasted from a quarter of an hour to an hour (no fixed length of time being observed) consisted in silent prayer, the repetition of the Lord's Prayer, the Ten Commandments, the Sermon on the Mount, and any other prayer deemed by her to be worthy or necessary. Whether or not Mr. McDowell repeated the prayers after her at all times does not appear, or whether the prayers were actually uttered audibly or not at all times, or at any time is not

certainly disclosed by the record. Mrs. McDowell was asked which the defendant recited first, the Lord's Prayer or the Sermon on the Mount, to which she responded, "Just as she chose. It was silent." And the defendant herself says, that she wanted the jury to understand that she did not recite the prayers.

At all events, Mr. McDowell continued to decline until the 10th of November, when a physician was called in by one of his daughters, they being unbelievers, but the patient was apparently beyond the efforts of man, for he departed on November 13th.

What efficacy there may be in treating bodily ills through means so laudable in themselves, the court is not called upon to decide. We are taught that: "The prayer of the righteous man availeth much." At the same time, common human experience gives great weight to the adage: "The Lord helps those who helps themselves". And we can not but think that there was much practical sense, as well as true religion in General Putnam's historic utterance to his yeomen, at the Battle of Bunker Hill: "Trust in the Lord and keep your powder dry."

But, granting perfect sincerity to a now considerable number of highly respectable persons, who are willing to prescribe and undergo treatment of this nature, without any reliance upon the virtues which Nature has stored up in minerals and plants and herbs, or upon the wisdom of those who have become learned in their use through endless study of their own, and from the accumulated experience of centuries, the court passes on to a further consideration of the matter in its legal aspect.

It must be remarked that if any virtue accrues to the patient subjected to this treatment, it is not through the operation to any physical substance brought into contact with the body. This consideration calls into operation the very rule rejected in passing upon the demurrer, as not applicable thereto, for it is quite certain that "drugs or medicines or other agency," used as they are in connection with the subjects, medicine and surgery, can only mean, so far as their actual use in treatment is involved, the physical agency employed by one acting as physician or surgeon, whether used internally or externally, and were not intended to cover cases in which the application of the remedy does not partake of physical attributes, but is the operation of some subtle influence flowing from the mind of one person to that of another, or growing out of a contract of the spiritual nature with the great Source from which it came.

The motion in arrest of judgment, after the verdict of guilty should have been granted upon the evidence in the case.

Other considerations also present themselves, which but the more firmly convince the court that the legislature did not intend by these statutes to include such acts as the evidence shows the defendant committed.

The defendant on being asked to define christian science, said:

"Christian science is the word of God: it is the practice of truth, which destroys error: it is the life which Jesus asked of us to live, and follow his example in accordance with his command."

He says: "Go ye into all the world, preach the gospel, heal the sick, raise the dead, cleans the lepers"—and in obedience to this command, when I was asked by the deceased, I obeyed, and if this jury—if any one in this room, any person whatsoever persecutor or friend, enemy or anyone, comes to one and asks the same, I cannot but obey"

From this and other expressions in the record, it is clear that christian science is a kind of religious belief.

Freedom of thought and worship in matters of religion is a birthright of every citizen, and the legislature cannot take it away or abridge it. It is true that if any practice permitted by any form of religion is against good morals as for instance, the polygamy of the Mormans, the people, through their agents, the General Assembly may protect themselves, and it is doubtless al-

so true that similar protection might be had against any practic considered by the majority to be harmful to public health. But it must be borne in mind that the claim of power to heal by means regarded generally as miraculous is not confined to those professing belief in christian science.

It is well known that there are many persons in this country, not of this peculiar sect, who devoutly believe that bodily infirmities may be cured by contact with the bones and relics of deceased persons, whose lives were of extraordinary holiness. Can it be that the legislature had such persons in mind, intended by this legislation to punish the custodian of such articles, if, perchance, he charged a compensation or accepted a gratuity to be expended in their care and preservation? But if this act applies to one class, it must also apply to the other. Is it not most pertinent to assert that if the legislature had intended to interfere in matters of religion, even if the case were one most proper for interference, they would have plainly said so, and would not have left their meaning to be made the subject of learned aruyments and to be declared by judges with common human failings and limitations.

The court is of opinion that the law in question does not include such acts as the defendant is charged with having committed, and for all the reasons given above the judgment of conviction is reversed.

Charles B. Wilby, for Plaintiff in Errcr.

C. F. Westfall, for the State.