LUCIA R. BRISTOL, Individually and as Executrix, etc., of GEORGE P. BRISTOL, Deceased, Appellant, *v.* CORNELL UNIVERSITY, Respondent.*

Third Department, March 15, 1933.

*William Hazlitt Smith* [*H. C. Stratton* of counsel], for the appellant.

*Mynderse Van Cleef* [*Allan H. Treman, J. F. O'Connor* and *Leo N. Simmons* of counsel], for the respondent.

HILL, P. J. This action is to recover the value of a dwelling built by plaintiff's testator upon land which he had leased from defendant. The university is required to purchase the building at the termination of the lease. Its value is conceded to be more

---

* Revg. 144 Misc. 414.

than $5,000. Plaintiff argues for a construction that as the thirty-year term of the lease expired on April 19, 1922, defendant is required to pay the " just and fair value of the building " as fixed by appraisers. Defendant says that under the terms of the lease the value of the building and of all improvements may not be fixed by the appraisers at " a sum in excess of $5,000." The following portions of the lease are involved: " The said party of the first part, for and in consideration of the covenants hereinafter expressed and the rents reserved, doth grant, demise and lease unto the party of the second part, for and during the full term of thirty years from the date hereof, which term will end on the nineteenth day of April, in the year 1922, the following described premises, viz.: " Then follows a description of the premises, terminating with a *habendum* clause as follows: " To have and to hold the same to the said party of the second part, his executors, administrators and assigns for and during the said term of thirty years, or until the termination of this lease as hereinafter provided." This is followed by a provision for the payment of the annual rental of one dollar and a requirement that second party, within six months, shall erect a house " of the materials and of a general style and arrangement previously approved by the Executive Committee of the Board of Trustees of said Cornell University." Under defendant's theory, the following is the clause of the lease that applies and fixes the maximum compensation which plaintiff may receive: " It is further covenanted and agreed by and between the said parties, that at any time when the connection of the party of the second part with the Cornell University is dissolved by death, resignation or otherwise, or at any time when the party of the first part shall so elect and shall give notice in writing of such election to the party of the second part, this lease shall terminate, and the party of the first part shall pay to the party of the second part, his executors or assigns, the then fair and just value, not exceeding $5,000, of the building erected on said premises in pursuance of the conditions of this lease and then remaining, such value to be ascertained and fixed by the appraisal of three disinterested persons, one of whom shall be selected by the party of the first part, one by the party of the second part, his executors, administrators or assigns, and the third by the two so selected; the award of said appraisers to be in writing. Provided, nevertheless, that for any improvement made the party of the first part shall in no case be required to pay a sum in excess of $5,000. And if for any reason the party of the second part, his executors, administrators or assigns, shall omit or refuse for twenty days after such termination of this lease to name and select the appraiser to be appointed by him, then the

party of the first part shall be at liberty to name and appoint the second of said appraisers also." With an abundance of caution, the $5,000 limitation is mentioned not only once but twice in this clause dealing with a termination occasioned by death, resignation or the like. Directly after the above, and in the same paragraph, is the following provision for the appointment of appraisers at the end of the thirty-year term: " And in case after the termination of this lease the party of the first part shall omit or neglect for twenty days thereafter to name and appoint the appraiser on its part, then such appraiser may also be named and appointed by the party of the second part. The award of any two of said appraisers shall be as effectual and binding as if all three joined in the making thereof; and upon the payment for such building being made as settled and determined by such award, or by the agreement of the parties, such building and improvements shall become and be the property and possession of the party of the first part." It should be noted that in this clause applying to the appointment of appraisers at the termination of the thirty-year term, no mention is made of a $5,000 limitation.

Next is a paragraph containing a description of the flag walk to be laid, and a requirement that second party is to care for the street and ditches in front of the premises. Then follows the portion of the lease which plaintiff argues should control: " The party of the second part covenants and agrees to surrender possession of said premises at the end of the thirty years herein provided, in good order and condition, necessary and usual wear thereof excepted, and the party of the first part covenants and agrees at that time to pay to the party of the second part the then fair and just value of the building erected upon said premises in pursuance of the provisions of this lease and then remaining, such value to be ascertained in the manner above provided by appraisers chosen and acting as above specified." A similar absence of the $5,000 limitation should be noted.

Bristol resided in the dwelling and continued his work with the defendant until the termination of the lease, and thereafter until his death in 1927. Then his widow continued to live in the house until July, 1930. This occupancy after the termination of the lease was by defendant's permission. The minutes of a meeting of its board of trustees held June 17, 1929, contain an entry: " Permission was granted Mrs. George P. Bristol to continue to occupy the house on the campus lot leased to the late Professor Bristol for the period of one year from July 1, 1929." Before the expiration of that year this disagreement arose, and in June, 1930, 'a notice was sent plaintiff containing the following recital: " Cornell University

hereby elects to terminate and does hereby terminate said lease on the 28th day of June, 1930." In view of the earlier permission to occupy the premises to July 1, 1930, this seems a belated attempt to make applicable the $5,000 clause. Defendant at one time either contemplated an act of grace and generosity or recognized the force of plaintiff's contention, as the minutes of the April, 1929, meeting of its committee on general administration contain a recital that an attorney " appeared before the committee on behalf of Mrs. Bristol and stated why he felt the University should pay more than $7,000 as heretofore offered for the Bristol house. After discussion the matter was referred to the chairman of the committee and the chairman of the Board of Trustees, with power."

The lease is for a fixed term and names the exact date of termination. The *habendum* clause grants possession during that fixed term, " or " to an expiration at an earlier date. Here the lease indicates that two different possible terminations were in the minds of the parties. The thirty-year period is definite and needs no discussion. The alternative earlier termination is provided for in the $5,000 clause. It never became operative, as the expiration of thirty years had terminated the lease before " the connection " of Professor Bristol " with the Cornell University [was] is dissolved by death, resignation or otherwise, or at any time when the party of the first part shall so elect and shall give notice in writing of such election."

" ' When a particular class is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive ' (*Matter of Hermance*, 71 N. Y. 481, 487), and the general words are restricted to those of the same kind (*ejusdem generis*)." (*Bers* v. *Erie R. R. Co.*, 225 N. Y. 543.) The *Bers Case* (*supra*) construed the words " private or other sidings " as used in a bill of lading, when applied to railway sidings, as meaning private sidings and others like private sidings, and rejected the claim that the phrase was to be construed as meaning all sidings. This is an authority for a construction that the $5,000 clause applies to a termination caused by the dissolution of the connection between the university and the teacher through death, resignation or the like before the end of thirty years. It would have applied if defendant had discharged the teacher for inefficiency or inability, or to any like severance of the connection between these parties.

In the quest for the intention of the parties, if there be ambiguity in the language, consideration should be given to their relation, the circumstances surrounding the making of the contract, and its subject-matter. (*Wilson* v. *Ford*, 209 N. Y. 186; *Fleischman* v. *Furgueson*, 223 id. 235.) Professor Bristol, in 1892, was a young

man, well grounded by training in American and foreign universities to follow the work of a teacher. The defendant was one of the newer universities, with a progressive faculty and management. As compared with the present, its plant was modest and the land leased of little value. Its management believed that its interests would be furthered by the residence of professors on the campus, and by long service of satisfactory members of its faculty. The intention of the parties is reflected by the language of the lease. If Professor Bristol's connection with the university was brief, $5,000 was the maximum which he was to receive for the house that cost a greater sum. However, if the connection continued during the entire thirty years, which ordinarily would measure the span of his teaching life, more advantageous terms were given, and the " fair and just " value of his house was to be paid him or his estate. Defendant could terminate an unsatisfactory connection at any time. The progress and enlargement of the university has enhanced the value of this and like dwellings on the campus. The progress and enlargement have been the result of satisfactory connections between the management of the university and its faculty. The lease as drawn linked the destiny of Professor Bristol with that of the university. Its good or ill fortune was to be shared by him. The instrument permitted the university to accelerate the termination and make the $5,000 limitation apply at any time, even when the thirty years had nearly expired. This, it is said, discloses an intention that the limitation was to apply to all terminations. The giving of such an option and opportunity to the university to cut down the price of the house, is not an argument against plaintiff's contention, when the personnel of the parties and their purposes and relations are considered. The making of a profit or the gaining of individual financial advantage was not the controlling thought. Neither feared that the other would take every advantage that might be within the law. Professor Bristol was justified in believing that if his work was marked by merit that entitled him to continue his connection with the university, no sharp corners would be turned for a financial gain.

The thirty-year term having expired, a decision that plaintiff is entitled to the full and fair value of the house makes every part of the contract effective. (*Fleischman* v. *Furgueson, supra; Buffalo East Side R. R. Co.* v. *Buffalo Street R. R. Co.,* 111 N. Y. 132.) The contract was drawn by defendant's lawyers. If its meaning is doubtful, it must be construed most favorably to plaintiff. (*Moran* v. *Standard Oil Co.,* 211 N. Y. 187, 196.)

The decision of the Special Term by consent credits the defendant with the unpaid balance of the mortgage held by it, with interest, and determines that the value of the house as fixed by the appraisers

may not exceed $5,000. The decision as to limitation should be reversed, but the appraisal fixing the value as of 1930 should not be adopted, as the value should be fixed as of 1922. The subsequent occupancy did not change the lease in that regard.

The judgment of $2,285.88 in favor of the plaintiff should be reversed on the law and facts, and a new trial granted, with costs to the plaintiff. The court reverses finding of fact numbered 3 which contains a portion of the lease, for the reason that finding 21 contains the entire lease; also reverses findings numbered 9, 11, 13, 16 and 19.

All concur, except RHODES, J., who dissents, with an opinion in which BLISS, J., concurs.

RHODES, J. (dissenting). I am unable to convince myself that the parties intended that the liability of the university should exceed $5,000.

It seems to me the dominant thought running throughout the entire agreement was to place a limit of $5,000 upon the obligation assumed by the university. The lease, by its terms, was to expire at the end of thirty years on the 19th day of April, 1922. Thus, if it had been terminated on the 18th day of April, 1922, by " death, resignation or otherwise," the university would have been obligated to pay not over $5,000. While after its expiration on the 20th day of April, 1922, according to the contention of the appellant, the university would have been obligated to pay its actual value no matter if it ran $20,000 or $30,000. I can discover no apparent reason for any such disparity dependent upon a lapse of three or four days.

Furthermore, there was the possibility that the lease would run for its full term and in which event it is fairly to be assumed that the parties contemplated the buildings would naturally deteriorate and depreciate at least through the action of the elements. The parties provided that " when the connection of the party of the second part with the Cornell University is dissolved by death, resignation or otherwise, or at any time when the party of the first part shall so elect and shall give notice in writing of such election to the party of the second part, *this lease shall terminate.*"

It is also provided that the " term will end on the nineteenth day of April, in the year 1922." In either contingency the lease was to terminate or end. The parties provided a complete scheme for terminating and arriving at the amount to be paid by the university in case of the termination of the contract. Then they inserted the usual clause requiring the tenant to surrender the premises at the end of the term in good condition. Then apparently having in mind the rule of law that any buildings remaining upon the

demised premises at the end of the term belong to the landlord unless otherwise provided, through an abundance of caution they again specified that the university should pay to the tenant for the buildings " the then fair and just value of the building erected upon said premises, * * * such value to be ascertained *in the manner above provided."

Technical rules of construction are not of much help in construing a contract such as this. It seems to me that often by construing contracts in accordance with technical rules of construction according to formulæ laid down in specific cases by the courts, a result is arrived at and an intention is imputed to the parties which distorts their real intention and produces a result which they never contemplated. The question always is, what did the parties mean and intend.

I agree with Presiding Justice HILL that all the provisions of the contract should be harmonized if possible. It seems to me that a provision which would limit the liability of the university to $5,000 for a period of thirty years and then a day later permit an expansion of that liability to $20,000 or $30,000 is not a consistent construction and that it is not in harmony with the apparent purpose and intent of the parties.

The lease provides for its termination for certain specific reasons and in that case limits to $5,000 the amount which the university is to pay. It then makes provision for ascertaining the value by appraisers. It then states: " Provided, nevertheless, that for any improvement made the party of the first part shall *in no case* be required to pay a sum in excess of $5,000." It seems to me this clause is all exclusive and limits the liability of the university, and in any and every contingency, to $5,000. If this was not the purpose and intention of the parties when they inserted this later clause, there was no necessity for it because immediately prior thereto they had limited the liability of the university in case the lease should be terminated by reason of foregoing specific happenings.

I, therefore, vote to affirm the judgment, with costs.

BLISS, J., concurs.

Judgment for $2,285.88 in favor of plaintiff reversed on the law and facts, and new trial granted, with costs to the appellant to abide the event.

The court reverses finding of fact numbered three, which contains a portion of the lease, for the reason that finding numbered twenty-one contains the entire lease.

The court also reverses findings of fact numbered nine, eleven, thirteen, sixteen and nineteen.