**PEERLESS WEIGHING & VENDING MACH. CORPORATION v. INTERNATIONAL TICKET SCALE CORPORATION.**

No. 7767.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 19, 1942.

Decided March 10, 1942.

George B. Finnegan, Jr., of New York City, and Herbert L. Cohen, of Wilmington, Del., for appellant.

Samuel E. Darby, Jr., of New York City (E. Ennalls Berl, of Wilmington, Del., and Louis D. Fletcher, of New York City, on the brief), for appellee.

Before CLARK and JONES, Circuit Judges, and GIBSON, District Judge.

JONES, Circuit Judge.

The plaintiff sued for alleged patent infringement to which the defendant answered setting up patent invalidity and non-infringement, and further interposing as affirmative defenses laches, estoppel and release. On joint motion of the parties the District Court proceeded to a trial of the affirmative defenses. This resulted in the court's dismissal of the complaint on the ground of laches (37 F.Supp. 582) and the plaintiff filed the pending appeal.

The facts material to the questions involved are not in dispute. The plaintiff, Peerless Weighing and Vending Machine Corporation (hereinafter referred to as Peerless), is engaged in the business of manufacturing and operating penny scales and coin-impelled vending machines and is the successor through a reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, of a group of holding

and operating companies including a company known as Rhodes-Hochriem Manufacturing Company (hereinafter referred to as Rhodes). The defendant, International Ticket Scale Corporation (hereinafter referred to as International), is engaged in the business of operating coin-impelled ticket scales.

Prior to 1932, International and Rhodes were involved in litigation which included a suit by Rhodes charging International with infringement of the same patent now sued upon by Peerless in the instant action. In the earlier Rhodes suit, International had filed a counterclaim on the basis of a patent of which it was the licensee, but the counterclaim had been dismissed on April 6, 1932. At the same time there was pending in the courts of New York a suit by one Andrews, President of International, against Consolidated Automatic Merchandising Corporation (hereinafter referred to as Consolidated), the top holding company of Rhodes and other companies. Andrews approached Rhodes with a view to terminating all litigation between them and their respective companies or affiliates. The result was a written agreement of settlement on November 7, 1932, between Consolidated and Rhodes of the first part and Andrews and International of the second part, whereby the Rhodes and Andrews suits were discontinued and mutual releases of the same date in favor of all interested parties as contemplated by the agreement were exchanged. It is on the basis of this agreement and the release given pursuant thereto that International now asserts freedom from the liability which Peerless seeks to impose by its present suit.

On the question of laches, the appellant argues that the long delay (eight years) in bringing suit against International was satisfactorily explained at trial. Thus Peerless asserts that the first four years of the period of inaction were consumed in the reorganization proceeding from which Peerless evolved, two years more in organizing the new company and in regaining the business, and the two additional years in investigating the patent situation of Peerless in general, which resulted in the filing of the instant suit. While we should be reluctant on the record before us to disturb the trial court's conclusion that the plaintiff's delay in bringing suit was unreasonable, in the view we take of the case it is unnecessary for us to pass upon that matter. The release, which rests upon the legal effect of the written agreement and formal release of November 7, 1932, is a complete answer to the plaintiff's complaint.

The material portions of the settlement agreement are as follows:

"3. It is agreed further that First Parties [Consolidated and Rhodes] hereby release Second Parties [Andrews and International], their heirs, successors and assigns and the makers and users of scales made by or for Second Parties, from any claim or liability by reason of the manufacture, use or sale of scales manufactured by or for International prior to the date of this agreement; * * *.
* * *

"5. Nothing herein or in said releases or stipulations shall be deemed to bar any suit based upon any scales hereafter made by any of the parties hereto or upon any cause of action hereafter accruing in favor of said Andrews, or shall carry any inference regarding the question whether scales such as those heretofore made by any party infringe any valid right of any other party."

The release itself expressly released Andrews and International and the makers and users of their scales from all "claims and demands whatsoever in law or in equity, so far as based on the manufacture, use or sale of scales manufactured by or for the parties released" which Consolidated or Rhodes "ever had, now have or which they, their successors or assigns hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever * * * including particularly any liability for patent infringement by reason of the manufacture, use or sale of scales heretofore made by or for said International * * *."

The present suit is concerned with the alleged infringing use by International of some five thousand ticket scales which, concededly, it owned and was operating prior to and at the time of the settlement agreement and release of November 7, 1932. The plaintiff seeks an injunction against International's further use of these particular ticket scales and recovery for International's alleged infringing use of those scales during the six year period prior to the filing of the suit which was instituted in 1940. It is admitted that no scales are involved which were manufactured by or for International after the date of the settlement agreement and release.

It is the appellant's contention that the agreement released International only from such claims for alleged infringing use of the ticket scales as had accrued prior to the execution of the agreement and release, while International contends that the agreement released it from all claims whether for past or prospective use of the scales actually owned and in operation by International at the time of the agreement and release.

The question is therefore one of interpretation of the agreement and release, and we turn first to a consideration of the law determinative of the rights of the parties under the agreement and release. Rhodes was an Illinois corporation, Consolidated a Delaware corporation, International a Delaware Corporation, and Andrews a resident of New York. The agreement, which was drafted by the attorney for International and modified in certain respects in compliance with suggestions from Rhodes' attorney, was executed in New York. The forum of the present action is Delaware. The affirmative defenses do not rest upon patent law but arise out of matter ex contractu. Consequently, we look to the rule of conflicts of the forum in order to determine the law applicable in the interpretation of the settlement agreement and release. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477.

Delaware has a general rule that the construction of a contract is to be governed by the law of the place where the contract was made. Lams v. F. H. Smith Co., 5 W.W.Harr. 477, 178 A. 651, 653, 105 A.L.R. 646. Thus, we are referred to the law of New York for ascertainment of the rules applicable to the interpretation and construction of the agreement and release here involved. Under the law of New York, the construction of a plain contract is for the court and the intention of the parties is to be found in the language employed. The Court of Appeals of that state has pointed out a number of times that the parties to a contract are to be bound according to its plain terms unless, when so construed, the contract becomes meaningless; and, even rejection of a contract for that reason is at best a last resort to be used only when all effort at purposeful construction appears to be futile. Stern v. Premier Shirt Corporation, 260 N.Y. 201, 183 N.E. 363, 364; Outlet Embroidery Co., Inc. v. Derwent Mills, Limited, 254 N.Y. 179, 172 N.E. 462, 463, 70 A.L.R. 1440; Cohen & Sons, Inc. v. M. Lurie Woolen Co., Inc., 232 N.Y. 112, 114, 133 N.E. 370, 371.

Applying these simple rules to the facts of the instant case, it becomes the court's duty to interpret the intent of the parties from the four corners of the written agreement and release. So interpreted, the release given by Consolidated and Rhodes (the predecessors of Peerless) to International relieved the latter of any and all liability on account of International's use of the scales owned and operated by it at the time of the release. It is, indeed, difficult to see how the agreement and release could have more clearly indicated that the use of the scales permitted to International was not to be limited merely to such use as International had made thereof prior to the settlement. The very evident contemplation of the parties was that International should have the right to use in the future the scales already manufactured by or for it at the time of the settlement. This construction is the obvious meaning of the words of the agreement and release and is further confirmed by the clause in the agreement which saves to Consolidated and Rhodes the right to sue in the future for alleged infringing use of scales manufactured after the agreement. Under the unwarrantedly narrow construction which the appellant would place upon the agreement and release it would be wholly unnecessary to include a saving clause with respect to infringing use made of machines manufactured in the future. If all future use of scales by International was to afford a basis of claim on the part of Consolidated and Rhodes, then it would be immaterial whether the scales had been manufactured before or after the settlement agreement. The appellant derives its strained construction of the agreement by using the phrase "prior to the date of this agreement" in paragraph 3 of the agreement as modifying "manufacture, use or sale", whereas the phrase has reference to "scales manufactured by or for International" to which it is directly related.

The contract and release are plain and unambiguous. There is certainly no occasion for resort to the secondary rule of interpretation which requires that any doubt be resolved against the drafter of the writing (International in this case). Moran v. Standard Oil Co., 211 N.Y. 187, 196,

105 N.E. 217, 220; White v. Hoyt, 73 N.Y. 505, 511; Potter v. Ontario & Livingston Mutual Insurance Co., 5 Hill 147, 149 (N.Y.Supreme Ct.); Bristol v. Cornell University, 237 App.Div. 771, 263 N.Y.S. 380, 385. Moreover, the cases which the appellant cites with respect to the effect of mutual mistake of subject matter upon the existence of a contract are not in point. In Consumers' Ice Co. v. E. Webster, Son & Co., 32 App.Div. 592, 53 N.Y.S. 56, 57, there was an actual mistake and misunderstanding as to the party with whom the defendant was dealing. Likewise in Raffles v. Wichelhaus, 2 H. & C. 906, 159 Eng.Repr. 375 (Ct. of Exch.1864), there was a mutual mistake of fact as to the identity of a ship where there were two ships of the same name, both out of Bombay. Each of the parties to that contract had a different ship in mind. There is no such situation here. The appellant laboriously tries to worm out of a plainly worded and readily understandable agreement and release something that is not there and was never intended to be there.

The decree of the District Court is affirmed.