In the Matter of the Will of KATE E. BROWN, Deceased.

Surrogate's Court, Erie County, May 19, 1947.

*Wells W. Parker* and *Brainard E. Prescott* for Erie County Trust Company, petitioner and coexecutor.

*John Cooke* for Emogene Eldridge, coexecutrix.

*Franklin R. Brown,* special guardian.

PAUL, S. This is a proceeding to construe the will of the decedent. The questions involve the matter of a mortgage specifically bequeathed but paid to the decedent before her death, also certain shares of stock bequeathed by the will but which were sold by the decedent in her lifetime.

As to the mortgage, there was a balance of about a thousand dollars of principal owing on the same when it was acquired by the decedent. It was fully paid to her before she died. Her will states the following in reference thereto: " Item II: (b) To pay over to my niece, EMOGENE H. ELDRIDGE, the net income from a mortgage owned by me and given by Hawskie S. Loper upon premises situate upon Lot No. 1 of the Town of Marilla, Erie County, New York, being on the Ostrander Road, for and during the lifetime of Lulu Stanton, mother of Emogene H. Eldridge with the request to my said niece that such income be used for the benefit of my brother, Daniel Eldridge, now an inmate of the Buffalo State Hospital at Buffalo, N. Y., or so much thereof as in the judgment of my said niece shall be requisite and necessary for his personal needs and comfort, but in no case to be used for his support and maintenance." The entire provision of paragraph (b) of item II of the will must fail by reason of the fact that the decedent had received the full amount of the mortgage before her death and made no provision in lieu thereof to meet such changed condition and circumstance. (*Matter of Farber,* 53 N. Y. S. 2d 886.) The action of the executors and trustees in assuming the validity of this paragraph of the will was improper and expenditures made on such assumption are disallowed.

The testatrix bequeathed to Emogene H. Eldridge the net income of and from an equal one half of all stock of the Buffalo Niagara and Eastern Power Corporation, or the proceeds that shall arise from the sale thereof, for and during the lifetime of the said Lulu Stanton. A portion of the stock in this corporation, which the decedent owned at the time of making her will, was sold by her during her lifetime.

The disposition of this matter of construction is demonstrated by the decision of Surrogate DELEHANTY in *Matter of Jay* (189 Misc. 40, 41). The facts are shown in the following excerpts from the court's opinion:

" Deceased drew her will on March 21, 1941. She was then the owner of certain *preferred* shares in a corporation and by her will disposed of the shares in trust for the life benefit of her sister. The corporation called in the shares and on September 1, 1945, deceased received in cash their entire redemption value. She reinvested part of the amount received by her and among the securities bought by her there were some shares of *common* stock of the same company. She died on December 31, 1945, without making any change in her will.

" The account now before the court is an account by the executors. They report that they have a balance of cash on hand and they ask to be advised respecting the operative effect of the provision of the will which relates to the shares of stock heretofore mentioned. \* \* \* Deceased's will refers to her stock ownership as of the date of its execution but it speaks as of the date of deceased's death when it deals with the shares. It was as of the latter date that deceased's sister was to begin to have the trust income and it was only as of the latter date that the remainderman would become vested with any interest in the shares. The part of the quoted text which refers to the stock being ' redeemed ' or ' retired in whole or in part ' and the part which authorizes the sale of the shares on consent of the remainderman, all speak of action to be taken *after* deceased's death and do not relate at all to matters occurring during deceased's lifetime.

" The gift is a specific legacy in trust (*Crawford* v. *McCarthy,* 159 N. Y. 514, 518–519). Since it is a specific legacy the court must ascertain whether its subject matter was in existence at the time of the testator's death. If it was not so in existence then there is an ademption. Ademption has no relation to the intention of a testator. ' What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change.' (*Matter of Brann,* 219 N. Y. 263,

268; and see *Matter of Ireland,* 257 N. Y. 155; *Ametrano* v. *Downs,* 170 N. Y. 388.) Here the ademption is complete. The subject matter of the gift was nonexistent at deceased's death.

"The proceeds of the shares intended to be given can be found perhaps in the cash which was in deceased's possession at the time of her death and may be traced in part to securities purchased with part of the cash. But neither the cash nor the additional investments are the thing given. The will does not substitute such cash or new securities for the non-existent shares. No rights under clause (11) of the will accrued either to the sister of deceased or to the remainderman. The property in the estate available for distribution is to be disposed of in accordance with the other terms of the will."

The recent case of *Matter of Hicks* (188 Misc. 563) holds that the character and amount of stock actually owned by the decedent at the time of his death controls the question of ademption of the legacy.

I must decide that since the testatrix here did not own the stock at the time of her death, the income from which she had bequeathed by her will, there can be no substitution of the proceeds which she had received from the sale of the stock. As Surrogate DELEHANTY so aptly pointed out in the *Jay* matter (*supra*) it was the income from the stock which was bequeathed and not the income from the proceeds received from the sale of the stock.

The court is also asked to construe that portion of the will which provides: "To yield and pay over to my said niece, Emogene H. Eldridge, the net income received and realized from the farm of approximately one hundred acres owned by me and known as the 'Leugemore Farm' situate upon Lot No. 4 of the Town of Marilla, Erie County, New York, and upon the Two Rod Road, for and during the lifetime of the said Lulu Stanton, mother of my said niece, and upon the death of the said Lulu Stanton, to yield, surrender and convey said farm and premises, and the appurtenances thereto belonging to my said niece, Emogene H. Eldridge, subject to the provisions of subdivision 'e' of Item II thereof."

The decedent owned the farm at her death. It was operated for a time by the estate. Its further operation was deemed inadvisable and all tools, stock and personalty thereon were sold and the land itself was later sold. Does the beneficial interest of Emogene extend to the total amount received from the sale of both the real property and personalty or does it apply only to such amount thereof as was received from the land itself?

"For and during the lifetime of * * * Lulu Stanton" the farm was to be treated as a unit. It was being operated by the decedent as a unit at the time of her death. The necessary tools, stock, equipment and personalty were on the farm. They were being applied to the purpose of yielding income from the products of its soil. It was the "Leugemore Farm" of one hundred acres. Surely it was intended that the greatest possible "yield" was contemplated by the testatrix to be produced and paid over to Emogene. There could be no "yield" from the farm in a practical sense, as understood by the layman, without the use of the instrumentalities necessary to create the "yield". Merely rent as income from the farm might arise from the renting of the bare land. To make yield there must be husbandry by the use of labor and personal property. I believe that was what the testatrix intended during the lifetime of Lulu Stanton.

Corpus Juris (Vol. 71, p. 1650) defines "yield" as follows: "To bear, to give a return for labor, or to produce; to give in return for labor expended or to produce as payment or interest on what is expended or invested * * *."

Must we separate the personalty from the realty and say that when the event occurs which gives the "Leugemore Farm" to Emogene that the bare realty shall at that time be the limit of the gift, although the gift of income has included the use of the personalty? With "the appurtenances thereto belonging" are ordinarily words of technical meaning and import. The testimony on the hearing shows that there are no easements or appurtenances connected with the title to the farm and none known to actually exist. These words were not intended to be futile and meaningless. They were intended to have some bearing on what was to be included with the farm.

If the court were to hold that the ultimate gift of the farm to Emogene did not include the stock, tools and personal property, then the same reasoning would limit the income to that which might be produced from the renting of the bare land itself without the use of the personal property. The language of this paragraph of the will definitely does not have such meaning. It requires the use of the existing personalty as has been previously demonstrated. When the words of conveyance to Emogene are examined, they refer to "said farm and premises", the same farm which it is directed shall yield a net income from which the income is to be "realized".

Judge LEHMAN in *Farmers' Loan & Trust Co.* v. *Callan* (246 N. Y. 481, 487) said: "No technical rules of construction, no

artificial analysis of language used, may defeat intention where that intention is manifest in the language of the instrument itself. Where a grantor or testator clearly discloses the sense in which he intended the words he has used should be understood, the courts construe them in no other sense, though such use be inartificial or even inaccurate according to the dictionary.''

What was intended by the testatrix when she wrote '' said farm '' may be indicated from what she understood the farm to consist of when she referred to the net income to be yielded from the same. The use of the words '' said farm and premises '' supports the construction to be adopted. Words of uncertain meaning are made certain when considered with other words whose meaning is defined or explained. (*Finucane* v. *Standard Accident Insurance Co.,* 184 App. Div. 280; *Matter of Hermance,* 71 N. Y. 481, 487; *Matter of Robinson,* 203 N. Y. 380; *Donahue* v. *Keeshan,* 91 App. Div. 602.)

I hold that the testatrix intended to have the farm operated and cultivated with the use of the personal property thereon at the time of her death, and under the unusual circumstances herein, that when the operation of the farm by the executors and trustees should cease, and the farm is sold, the '' said farm '', including the personal property thereon, used in conjunction therewith, was to become the property of Emogene Eldridge.